SHAW, P. J.
 

 The defendant was charged with violating subdivision (a) of section 560 of the Vehicle Code and now appeals from a judgment of conviction entered against him. The code provision just mentioned reads as follows: “The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter.” The terms “roadway” and “crosswalk” are defined in the Vehicle Code, but no questions arise here as to their meaning, and those definitions need not be copied.
 

 There is very little conflict in the evidence, but resolving such conflicts as there are in favor of the judgment, the following facts appear: The events on which the charge is based occurred at the intersection of Figueroa Street and Bishop Road. Figueroa Street here runs in a northerly and southerly direction and is divided by a white center stripe; each half is further divided into two lanes by another line, the lane nearest the center line being 10 feet wide and the other lane next to the curb, being 27% feet wide. Bishop Road runs in a northwesterly and southeasterly direction, intersecting Figueroa Street diagonally, and a painted crosswalk 15 feet wide extends across Figueroa Street in line with the southerly curb line of Bishop Road. The defendant was driving his automobile northerly on Figueroa Street, after dark, at a speed of about 25 miles per hour, in the east half of the street, and as he approached this crosswalk he turned into the lane nearest the center line. There were other automobiles ahead of him on his right which obscured his view of the easterly 27% feet of the crosswalk. While defendant was approaching the crosswalk, two pedestrians crossing Figueroa Street from west to east passed in front of him in the crosswalk, completely crossed the ten-foot lane in which he was driving, and reached a point several feet east of the easterly line of this lane, where other automobiles cut off defendant’s view of them. As they reached this point, another automobile, in the lane to the right of defendant, came up to the crosswalk, at a high rate of speed, and bore down
 
 *Supp. 757
 
 upon these pedestrians. Thereupon the pedestrians suddenly-leaped backward to the west, directly in front of defendant’s car, which was then 20 feet from them. He at once applied his brakes, turned hard to his left and skidded to a stop, but his car ran into the crosswalk and there struck the pedestrians before stopping. Defendant testified that he did not see these pedestrians when they crossed in front of him going easterly; but his duty to yield them the right of way cannot be any greater by reason of that fact than it would have been if he had seen them. It is our opinion that on these facts defendant was not guilty of the charge laid against him. While it does not appear that his speed violated any of the
 
 prima facie
 
 limits of section 511 of the Vehicle Code, a charge of violating the basic speed law of prudent driving laid down in section 510 might possibly have been supported here, but no such charge was made, and the conviction cannot be upheld on that theory.
 

 Looking again at section 560 of the Vehicle Code, we note that its essential requirement is that the driver “yield the right of way” to the pedestrian who is crossing a roadway in a crosswalk. The term “right of way” is defined by section 87 of the Vehicle Code as “the privilege of immediate use of the highway”. What is meant by yielding this privilege, and when must it be yielded ?
 

 Questions of right of way arise between two users of the highway only when there is danger of a collision between them if both proceed on their respective ways without delay.
 
 (Mitrovich
 
 v.
 
 Graves,
 
 (1938) 25 Cal. App. (2d) 649, 654, 655 [78 Pac. (2d) 227];
 
 Cowan
 
 v.
 
 Market St. Ry. Co.,
 
 (1935) 8 Cal. App. (2d) 642, 646, 647 [47 Pac. (2d) 752] ;
 
 Switzer
 
 v.
 
 Baker,
 
 (1916) 178 Iowa, 1063 [160 N. W. 372, 375].) The case of
 
 Mitrovich
 
 v.
 
 Graves, supra,
 
 involved the provision of section 562 of the Vehicle Code which requires a pedestrian crossing a roadway at a point not within a crosswalk to “yield the right of way to all vehicles upon the roadway”, and the court said that it “merely means that when the course of an automobile along a highway meets with that of a person who seeks to walk across the street or roadway at a point other than along a marked crosswalk, under circumstances which render a collision likely, the pedestrian must stop and permit the vehicle to pass ahead of him. . . . The rule applies only under circumstances when the opposite courses of the vehicle and the pedestrian render it dangerous for
 
 *Supp. 758
 
 both to proceed on their respective ways without delay. Under such circumstances, the pedestrian must stop to permit the vehicle to precede him.” In
 
 Switzer
 
 v.
 
 Baker, supra,
 
 the court had under consideration a city ordinance providing that “pedestrians are given the right of way over the crossings at street intersection”, and said that such legislative regulations of the right of way mean “that, when two or more persons moving in different directions approach a crossing at the same time or in such manner that if both or all continue their respective courses there is danger of collision, then the one having the preference is entitled to the first use of such crossing, and it is the duty of others to give him reasonable opportunity to do so”.
 

 Applying these principles to the statutory provision here involved, it is clear that when a pedestrian crossing a roadway in a crosswalk is so far from the path of an approaching automobile and proceeding in such a manner that no interference between them is reasonably to be expected, the driver of the automobile need not wait for it to develop. It is equally clear that a driver, after having allowed a pedestrian to proceed undisturbed and unhurried in front of him and to reach a place safely out of the way of his automobile, with no apparent further danger of conflict between them, may proceed. He need not continue to wait until the pedestrian has cleared the roadway, nor need he anticipate that the pedestrian will suddenly change his mind and reverse his course of travel, in the absence of circumstances reasonably suggesting such a course. The latter contingency was dealt with in
 
 Cline
 
 v.
 
 Bush,
 
 (1935) 152 Or. 63 [52 Pac. (2d) 652, 654), and in
 
 Switzer
 
 v.
 
 Baker, supra,
 
 (1917) 178 Iowa, 1063 [160 N. W. 372, 375], which were civil negligence eases, in each of which it appeared that a pedestrian, after safely passing across the path of an automobile, suddenly turned back in front of it. In
 
 Cline
 
 v.
 
 Bush, supra,
 
 the statute applicable to the case was in substantially the same words as section 560 of the California Vehicle Code, above quoted, and the court said: “If the pedestrian stops or reverses his course and places himself in a position of peril in such close proximity to the driver’s car so the driver would not have time to stop or change his course to avoid a collision, the driver would not be liable in the absence of other negligence on his part.” In
 
 Switzer
 
 v.
 
 Baker, supra,
 
 dealing with the ordinance, already quoted, giving pedestrians the right of
 
 *Supp. 759
 
 way over crossings at street intersections, which is practically the same as section 560 of our Vehicle Code, the court said that if the automobile driver “had his car under proper control and as he approached the intersection saw plaintiff crossing Locust Street from the north to south and saw that she had proceeded far enough in that direction to permit him as a reasonably prudent person to drive over the crossing behind her, there is nothing in the rules of the common law or in the statute or ordinance which forbade him to do so, nor was he bound to anticipate that plaintiff, having safely crossed his line of approach, might suddenly change her mind or become panic stricken and turn back into collision with his car”. Holding an instruction erroneous, the court further said: “Giving the instruction its strict literal effect, an auto driver approaching a crossing on which a woman is moving in either direction could hardly hope to escape the imputation of negligence without stopping and waiting until she had fully cleared the entire length of the crosswalk and made it certain she would not turn back. Such is .not the law and, were the ordinance to be so construed, it would be void for unreasonableness.’’
 

 When it becomes, or in the exercise of ordinary care should become, apparent to a driver that a pedestrian who has crossed in front of him has turned back, or will be compelled to turn back to escape danger, such driver must be careful to avoid a collision and if it is still possible for him to yield the right of way he must do so; but even then the law does not demand the impossible of him. If the driver is then so close to the pedestrian that he cannot stop before reaching the latter, his failure to stop and allow the pedestrian to pass cannot be regarded as a criminal violation of the statute here in question. In such a case, the driver comes within the saving grace of subdivision 6 of section 26 of the Penal Code, which declares incapable of committing crime “Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence. ’ ’ Such are the facts of this case. The defendant evidently did all he could to stop and yield the right of way to the pedestrians after he had an opportunity to know that they were coming back into his path. More was not required of him under the circumstances.
 

 
 *Supp. 760
 
 Defendant complains of a ruling overruling his objection to a question asking whether he stopped before entering the crosswalk. While the statute does not require a driver to do this in all cases, even if a pedestrian is somewhere in the crosswalk, yet the driver must stop whenever that course is necessary to the discharge of his duty to yield the right of way, and the inquiry into his conduct may properly extend to the matter of stopping as a part of the
 
 res gestae.
 

 The judgment is reversed and the cause is remanded to the municipal court for a new trial.
 

 Bishop, J., and Schauer, J., concurred.