220 P.2d 438]

Appellate Department, Superior Court, Los Angeles

[Crim. A. No. 2609.    July 3, 1950.]

THE PEOPLE, Respondent, v. SAMUEL SIMPSON HAHN,
Appellant.

Saul Ross for Appellant.

Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and Philip E. Grey, Deputy City Attorney, for Respondent.

THE COURT.—The defendant appeals from the judgment that followed his conviction on a charge of having failed to yield the right of way to a pedestrian who was lawfully in the crosswalk at which the defendant had been halted by a traffic signal saying "Stop." As debated by the parties to this action, the important question before us, and to which they desire us to give an explicit answer, is this: Must a driver of a motor vehicle, who is waiting at an intersection's crosswalk because the traffic signal is against him, continue to wait, after the "Go" signal appears, until all the pedestrians in the crosswalk have passed before him? Although we agree with the appellant that this question should be answered in the negative, we nevertheless are affirming the judgment, for we find the crucial question not to be the one over which the parties have struggled.

We quote the pertinent provisions of section 476, Vehicle Code, upon which defendant's conviction rests: "Whenever traffic is controlled by official traffic control signals exhibiting the words 'Go,' 'Caution,' or 'Stop,' or exhibiting different colored lights successively, one at a time, or with arrows, the following colors only shall be used, and said terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

"(a)  Green alone or 'Go.'

"1.  Vehicular traffic facing the signal shall proceed straight through or may turn right or left or make a semicircular or U turn unless a sign at such place prohibits any such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians

lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.''

It will be noted, reverting to the question deemed important by the parties, that the requirement of the statute is not that vehicular traffic shall continue to remain motionless until those lawfully in the intersection or an adjacent crosswalk have passed by, but only that it shall yield the right of way to them. We have had occasion to consider the meaning of ''yield the right of way'' in *People* v. *McLachlan* (1939), 36 Cal.App.2d Supp. 754 [93 P.2d 280], and *People* v. *Noland,* (1948), 83 Cal.App.2d Supp. 819 [189 P.2d 84]. We stated in the McLachlan case (p. 758): ''. . . it is clear that when a pedestrian crossing a roadway in a crosswalk is so far from the path of an approaching automobile and proceeding in such a manner that no interference between them is reasonably to be expected, the driver of the automobile need not wait for it to develop.'' Applying these words to the possibilities of the question under consideration, we are mindful that not infrequently a pedestrian, lawfully in the crosswalk because he entered it while the signal indicated ''Go'' (see *People* v. *Hawkins* (1942), 51 Cal.App.2d Supp. 779 [124 P.2d 691]), is but a relatively short distance from his point of entrance, and so far distant from the waiting motor vehicle that the latter can proceed to make use of that portion of the highway lying within the crosswalk without interfering with the right of the pedestrian to use it when he reaches it. The duty placed upon the driver is not so expressed that he is required to wait until the crosswalk is clear; his duty is to wait only if necessary to avoid interference with the pedestrian.

Whether or not a driver of an ordinary passenger car—who has proceeded without waiting until a pedestrian, walking at a normal speed, has crossed in front of him—has failed to do his duty, is a factual question involving at least two factors: the distance that the pedestrian is from the path the vehicle will take, and the rate at which he is coming. A running boy and a hobbling arthritic cripple obviously create different problems. In some cases the pedestrian will have been so close to the waiting motor vehicle that beyond any speculation the vehicle could not proceed without interference with the pedestrian's right of way. In other cases the pedestrian will have been so far away that no doubt exists that the vehicle's movement did not interfere with that of the pedestrian. In between these clear cases come those where the

answer is not so readily given. The question remains, however, one of fact, and that is: Who had the right of way? "Questions of right of way arise between two users of the highway only when there is danger of a collision between them if both proceed on their respective ways without delay." (*People* v. *McLachlan, supra,* 36 Cal.App.2d Supp. 754, 757.)

In answering the question the evident purpose of the statute, which is to secure safe passage for the pedestrian, should be kept in mind. His right of way is not to be measured in fractions of an inch nor tested by split seconds. He is entitled not to just as much space as his body, clothes and buttons require, but to as much as will afford him a safe passage, one that can be taken without either physical interference or such a threat of interference that will reasonably cause him to step back or hesitate in his going. The pedestrian's heart, as well as his body, should be free from attack.

█ In the case before us it appears that defendant's car was stopped at the east crosswalk of a north and south street, near the north curb of the street on which he was driving. Two car lanes lay between him and the center line of the roadway. By the time the signal turned to "Go" a pedestrian had reached and just crossed the center line on his way north towards the defendant. The pedestrian, then, had some 20 feet to traverse before reaching the lane in which defendant's car was standing. Was the defendant under a duty, in order to avoid any interference with the pedestrian's safe journey across the street, to wait until he had walked the 20 feet, and then on in front of defendant's car? This was the crucial question before the trial court, and while the decision is a close one, we are not ready to say that the affirmative answer given was without support in the record.

The judgment of conviction is affirmed.