[Civ. No. 19295. First Dist., Div. Two. Jan. 22, 1962.]

ANTHONY GELINI, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

Elmer P. Delany, Delany & Freitas and James A. Himmel for Plaintiff and Appellant.

Dion R. Holm, City Attorney, and Jerome Cohen, Deputy City Attorney, for Defendant and Respondent.

AGEE, J.—Plaintiff appeals from a judgment entered upon a jury verdict in favor of defendant in a personal injury action arising from a collision between the front end of defendant's cable car and the rear end of a taxicab being operated by plaintiff.

The collision occurred at the intersection of Powell and Bush Streets, San Francisco, on July 3, 1957, about 5:10 p. m. Powell Street runs north and south and Bush Street runs east and west. Traffic at the intersection is controlled by signals exhibiting red, green and yellow colored lights successively, one at a time. Powell Street is a cable car route, with separate sets of tracks for northbound and southbound cars. The block on Powell Street immediately to the north of Bush Street has a downgrade of 17 per cent in a southerly direction.

The taxi and the cable car were both proceeding south on Powell Street, the taxi being ahead of the cable car and straddling the southbound rails. In response to the red traffic signal for traffic on Powell Street, plaintiff stopped his taxi at a point about 2 feet north of the north crosswalk for pedestrians crossing Powell Street. It was his intention to proceed straight through the intersection when proper to do so and discharge his passenger at the southwest corner of the intersection.

When the traffic light for Powell Street traffic changed from red to green, plaintiff did not proceed but remained stopped. He testified that the reason for doing so was that there were pedestrians crossing Powell Street in the north crosswalk at the time. While so stopped, the cable car struck the rear end of the taxi and knocked it ahead and into a pedestrian named Luciano.

There is a "pre-emption" switch located on the southbound track at a point approximately 132 feet north of the north property line of Bush Street. This is activated by the passage of the cable car grip over the switch as the cable car proceeds south, or down the hill, toward Bush Street. The effect is to cause the light for Powell Street traffic to change to green if it was not already green at the time. If the signal is already green for Powell Street traffic at the time, then it

will remain green until the cable car has passed completely through the intersection of Powell and Bush. When the switch is activated, if the light for Bush Street traffic is then green, the light immediately goes on yellow for two and a half seconds and then changes to red, at which time the light for Powell Street traffic changes to green. The purpose of the switch is to clear Bush Street traffic, both vehicular and pedestrian, out of the way of the cable car and allow it to make its stop on the flat part of the intersection, rather than on the hill.

Pine Street intersects Powell Street one block to the north of Bush Street. That intersection is also level and Powell Street cable cars regularly stop within it to take on and discharge passengers. From the southerly property line of Pine Street to the northerly property line of Bush Street the distance is 275 feet.

### Was the Plaintiff Free of Contributory Negligence as a Matter of Law?

██ Plaintiff contends that, as a matter of law, defendant was negligent and he was not contributorily negligent. Hence, the judgment should be reversed with instructions to the lower court to retry the issue of damages alone and render judgment accordingly. The testimony as to the factor in dispute will be stated in the light most favorable to defendant. (*Shivers* v. *Van Loben Sels*, 109 Cal.App.2d 286, 288 [240 P.2d 635].)

Defendant's position is that plaintiff was required to proceed when the light changed to green, and that he could have done so at that time without endangering anyone; that the reason plaintiff did not do so was because he was turned around toward the rear of the cab facing his passenger and apparently engrossed in some transaction with her; that at the time of the change to green, the intersection was clear of pedestrians and vehicles; that by the time plaintiff turned around and looked ahead, the pedestrian (Luciano) was in the crosswalk and it would then have endangered him if the taxi had proceeded forward. Defendant asserts that the foregoing conduct by plaintiff violated section 476 of the California Vehicle Code[1] by failing to proceed when he should have, and that such violation was a proximate cause of the collision and the resulting injuries to plaintiff. Section 476 provided in part as follows: "Whenever traffic is controlled by official traffic control signals . . . exhibiting different colored lights suc-

---

[1] All references to Vehicle Code sections are as numbered at the time of the accident; in 1959, the numbering was completely revised.

cessively, one at a time, or with arrows, the following . . . lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

"(a) Green alone . . .

"Vehicular traffic facing the signal shall proceed straight through or may turn right or left . . . But vehicular traffic . . . shall yield the right of way . . . to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited. . . .

"(f) No person shall disobey the directions of this section except when it is necessary for the purpose of avoiding a collision or in case of other emergency . . ."

Section 560, subdivision (a) of the Vehicle Code provided: "The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection . . ."

■ If there is any conflict between these two sections, section 476 would govern, because it particularly relates to pedestrian-vehicular traffic controlled by "traffic control signals," whereas section 560, subdivision (a) relates generally to pedestrian-vehicular traffic at all crosswalks. (Code Civ. Proc., § 1859; 45 Cal.Jur.2d, Statutes, § 119, p. 628.) It was therefore proper to instruct the jury on section 476, instead of on section 560, subdivision (a).

Actually, the only difference between these sections discussed in the briefs is that section 560, subdivision (a) refers without limitation to a "pedestrian crossing the roadway within any . . . crosswalk," and section 476 refers to "pedestrians *lawfully* within" a crosswalk. (Emphasis added.) However, subsection (f) of section 476 qualifies this by providing, by necessary implication, that noncompliance is excused "when it is necessary for the purpose of avoiding a collision or in case of other emergency . . ." In considering plaintiff's conduct it makes no difference whether the question is worded, "Was he *required* to remain stopped because of the provisions of section 560, subdivision (a)?" or "Was he *excused* from proceeding as provided in section 476?" It is laboring the point to say that section 476 does not require or authorize a motorist to run into a pedestrian in order to proceed, even though the latter is not "lawfully" within a crosswalk at the time in question.

The plaintiff testified that when he was 75 feet from the intersection he observed that the light was red for Powell Street traffic and so he stopped before entering the northerly

crosswalk; that he never again observed the traffic lights before the collision; that he did not hear the gong or bell of the cable car and did not know of its proximity; that he was very familiar with the locality and knew that cable cars ran up and down Powell Street regularly; that he knew from a prior experience of the danger of cable cars not being able to stop on the hill. His passenger testified that her fare was 80 or 90 cents, and that before the impact she had paid the plaintiff with a one dollar bill. Plaintiff testified that he could not remember being paid the fare or making change for the one-dollar bill. Defendant argues that the fare transaction was what caused plaintiff to be turned toward the rear of the cab and resulted in his failure to observe the change in lights.

Witness Johnson testified that he had boarded the cable car at Pine and Powell Streets and was standing at the extreme front end on the outside wooden step or running board; that as the cable car started down the hill toward Bush Street he had a clear and unobstructed view of the intersection ahead; that the light for Powell Street traffic was green at that time and remained so all the way down the hill and until the impact with the taxi; that the intersection of Powell and Bush Streets was clear of traffic, both vehicular and pedestrian; that when the cable car was midway in the block, a pedestrian (Luciano) was just stepping off the curb at the northeast corner; that there was no one else in the crosswalk; that the taxicab was stopped at the foot of the hill when the cable car was just starting down the hill from Pine Street and that it remained in that same position until the collision; that the cab driver was turned around, facing the rear of the cab and the lady in the rear seat was faced toward the driver; that the cable car's gong was sounding and the brakes were screeching.

Defendant's gripman testified that the cable car was going only 4 or 5 miles per hour down the hill; that he was sounding the warning bell and anticipated that the taxi would move forward and allow him to stop in the intersection where it was level.

Plaintiff contends that, under the law, he *could not* have proceeded and was *required* to remain where he did. We do not agree. Under either section 560, subdivision (a) or section 476, it was a question of fact as to whether, under the factual situation presented herein, plaintiff should have proceeded when the light changed to green.

A conviction under section 560, subdivision (a) was reversed in *People* v. *McLachlan,* 36 Cal.App.2d Supp. 754 [93 P.2d

280], where the pedestrians were in the crosswalk when struck by defendant's automobile. The court discussed what is meant by "yielding the right of way" and stated (p. 758): "Applying these principles to the statutory provision here involved, it is clear that when a pedestrian crossing a roadway in a crosswalk is so far from the path of an approaching automobile and proceeding in such a manner that no interference between them is reasonably to be expected, the driver of the automobile *need not wait for it to develop.*" (Emphasis added.) In the cited case, the pedestrians leaped backwards because of fear of being struck by another automobile and therefore the facts are substantially different. But the language quoted above is applicable to the instant case.

 Plaintiff herein was faced with a duty under section 476 to proceed when the light changed to green. On the other hand, he owed a duty to the pedestrian not to endanger him by so doing, whether the latter was lawfully or unlawfully in the crosswalk. The issue is whether it was reasonable for him to proceed under the circumstances and this is a question of fact which was resolved adversely to plaintiff by the jury. Because of his inattention to the change in lights, plaintiff remained stopped when he could have proceeded without danger to anyone, and thus allowed a situation to develop which would endanger the pedestrian if plaintiff had then belatedly proceeded. As stated in the *McLachlan* case, *supra,* plaintiff need not have waited for this situation to develop.

*People* v. *Hahn,* 98 Cal.App.2d Supp. 841 [220 P.2d 438], involved the proper interpretation of section 476. The court stated: "[T]he requirement of the statute is not that vehicular traffic shall continue to remain motionless until those lawfully in the intersection or an adjacent crosswalk have passed by, but only that it shall yield the right of way to them. . . . The duty placed upon the driver is not so expressed that he is required to wait until the crosswalk is clear; his duty is to wait only if necessary to avoid interference with the pedestrian. . . . In some cases the pedestrian will have been so close to the waiting motor vehicle that beyond any speculation the vehicle could not proceed without interference with the pedestrian's right of way. In other cases the pedestrian will have been so far away that no doubt exists that the vehicle's movement did not interfere with that of the pedestrian. In between these clear cases come those where the answer is not so readily given." (Pp. 843, 844.) The court affirmed the conviction, saying that under the facts there involved, "while the decision

is a close one, we are not ready to say that the affirmative answer given was without support in the record.'' In the cited case, the pedestrian had reached a point 20 feet from the pathway of the automobile when the signal changed. Yet the court said it was a ''close'' question of fact as to whether the motorist violated section 476 by proceeding forward. The plain implication of the decision is that if the trier of fact had found differently, such finding would not have been disturbed on appeal. In the instant case there was substantial evidence upon which to base a finding of contributory negligence by the plaintiff, and the question therefore was one of fact which was properly left to the jury to determine.

ADMISSION OF ORDINANCE RELATING TO VEHICLE ON TRACKS

■ Plaintiff next contends that it was reversible error to admit into evidence and instruct the jury on section 120 of the Traffic Code of the City and County of San Francisco, which provides: ''It shall be unlawful for the operator of a vehicle proceeding or stopped upon any street car tracks so as to obstruct the movement of any street car to fail to remove said vehicle from said tracks or from in front of said street car as soon as practicable after signal from the operator of said street car . . .''

Plaintiff's argument is that the state has fully occupied the field of motor vehicle traffic regulation and that the ordinance is therefore invalid (citing *Pipoly* v. *Benson*, 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515]). However, the ordinance imposed no additional requirement or burden upon the plaintiff herein. It only required him to proceed ''as soon as *practicable*'' under the circumstances. (Emphasis added.) This is the same requirement and the same burden imposed by section 476 of the Vehicle Code, wherein the wording is that he ''shall proceed . . . *except* when it is necessary [to disobey] for the purpose of avoiding a collision or in case of other emergency.'' (Emphasis added.)

Assuming the validity of plaintiff's contention, any error in this respect did not result in a miscarriage of justice in this instance. (Cal. Const., art. VI, § 4½.)

AUGMENTATION OF RECORD

■ Separate actions were filed by the passenger and the pedestrian and these were consolidated with the instant action for trial. Plaintiff argued in his opening brief that the verdicts in their favor required a similar verdict in his case. Defendant pointed out in its reply brief that these other two

verdicts were not a part of the record on appeal herein and, moreover, were not relevant to plaintiff's case. Thereupon, plaintiff moved to augment the record by adding the verdict in each of the other two actions. This motion was denied.

The verdicts were general in form and no findings of fact (as in a special verdict) were made therein. (Code Civ. Proc., § 624.) Each verdict was separate and applied only to the particular action in which it was returned. Neither of the verdicts in the other two actions is properly a part of the record in this third action. As stated in *Taylor* v. *De Vaughn*, 91 Cal.App. 324, 326 [266 P. 963] : "Therefore this court cannot consider that transcript on this appeal even though the two cases were consolidated and tried together in the lower court."

In *People* v. *Smith*, 117 Cal.App. 530 [4 P.2d 268], defendants Smith and Hall were jointly charged with two counts of burglary, two counts of grand theft, and two counts of violating a Vehicle Code section. The court said: "[T]he jury returned verdicts of guilty and not guilty scattered among the six counts against each appellant, on a basis defying rational explanation. . . . Nor, in view of the abundance of the evidence warranting Smith's conviction of burglary on both counts charging that crime, is it a valid basis of complaint on his part, that the jury did not convict Hall on either count; although why they did not do so is plain neither to appellant Smith nor us." (Pp. 532, 533.)

We hold that the favorable verdicts received by the other plaintiffs cannot be used by plaintiff herein as a reason why he should have been favored likewise. The motion to augment was properly denied.

In his closing brief, plaintiff for the first time asks that all instructions which were requested but refused be added to the record on appeal. The complete instructions which were given, as well as by whom requested, are set forth in the reporter's transcript. The Rules on Appeal allow the inclusion therein of any instructions requested but refused which appellant shall desire transcribed. (Rule 4, subdivision (a).) Plaintiff made no request for any such inclusion and the transcript on appeal was certified to this court without any request by plaintiff for a correction or amendment thereof. (Rule 8.) Some two years elapsed between the original request to prepare the transcript and the present request to augment. Plaintiff has made no showing nor offered any reason for what appears to be inexcusable delay. Under less

extreme facts, an identical application was denied for this reason. (*Courtell* v. *McEachen*, 147 Cal.App.2d 219, 221 [305 P.2d 115]; see also *Podesta* v. *Deluchi*, 98 Cal.App. 579 [277 P. 364].) ██ We realize that we cannot review the failure of a trial court to give a certain instruction unless the record specifies such instruction and shows that it was requested and refused. (3 Cal.Jur.2d, p. 820.) ██ We further realize that the granting or refusing of a request such as that now made by plaintiff is discretionary with this court. ██ However, in the instant case, we feel that plaintiff's present request should be and it is denied.

Judgment affirmed.

Kaufman, P. J., concurred.

Shoemaker, J., did not participate herein.