Filed 12/5/22  Neeble-Diamond v. Hotel California By The Sea CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMANDA NEEBLE-DIAMOND, | |
| Plaintiff and Appellant, | G060734 |
| v. | (Super. Ct. No. 30-2019-01058756) |
| HOTEL CALIFORNIA BY THE SEA, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Deborah S. Servino, Judge.  Affirmed.  Motion to augment denied.

Employee Justice Legal Group, Kaveh S. Elihu and Samuel J. Moorhead for Plaintiff and Appellant.

Buchalter, Joshua M. Robbins and Thomas C. Rickeman for Defendant and Respondent.

\*        \*        \*

The test for determining whether a worker is an employee or an independent contractor is in a state of flux. Since 1989, the commonly employed test is the multi-factor analysis set forth in *S.G. Borello & Sons v. Dept. of Industrial Relations (1989) 48 Cal.3d* 341 (*Borello*). However, in *Dynamex Operations, West, Inc. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*), the Supreme Court held that for purposes of claims arising out of wage orders, the so-called "ABC Test" is to be used. In September 2019, in the wake of *Dynamex*, the Legislature enacted Assembly Bill No. 5 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 296, § 1(d)) (Assem. Bill No. 5) amending the Labor Code[1] by enacting a series of statutes specifying that for purposes of most other claims, the *Dynamex* ABC test should be used (Lab. Code, §§ 2775, et. seq.), while at the same time prohibiting workers from relying on the statutes for work performed on or after January 1, 2020. (Lab. Code, § 2785.)

In this case, Amanda Neeble-Diamond worked as the clinical director for Hotel California By The Sea, LLC (HCBTS), a substance abuse treatment facility, prior to 2020. She later sued HCBTS for various claims arising out of the termination of her work as its clinical director. She now appeals the judgment entered in favor of HCBTS, arguing the trial court committed instructional error by directing the jury to apply the *Borello* test to determine whether she was an employee or independent contractor, and also by failing to explicitly assign to HCBTS the burden of proving she was an independent contractor.

HCBTS counters that Neeble-Diamond waived any claim of error based on the jury instructions because she failed to include the instructions in the appellate record.

---

[1] All undesignated statutory references are to the Labor Code.

Neeble-Diamond's response is a motion to augment the record to include the jury instructions—filed at the same time as her reply brief—which we deny as untimely.[2]

We agree with HCBTS that the appellate record in this case, without the jury instructions, is insufficient to permit review of claimed defects in the instruction Neeble-Diamond challenges. But even if we assumed the instructions were as she portrays, we would affirm.

None of Neeble-Diamond's causes of action are based on wage orders, nor was her work performed on or after January 2020, and thus the trial court did not err in rejecting her proposed jury instruction based on *Dynamex*. Indeed, as she now concedes, the trial court would have erred had it granted her request. Instead, Neeble-Diamond argues the court should have instructed the jury pursuant to either a substantially modified version of the standard *Borello* test, or a statute contained in the Fair Employment and Housing Act (FEHA). Those claims are forfeited as Neeble-Diamond proposed neither to the trial court.

Neeble-Diamond's burden of proof argument, even if not waived, fares no better. The general rule is that the plaintiff has the burden of proving every element of the cause of action asserted. Neeble-Diamond offers no authority which would exempt this case from that rule. While the burden of producing evidence to support an independent contractor relationship may have shifted to HCBTS, the burden of proof did not. And since the burden of proof remained with Neeble-Diamond, the court did not err by failing to assign it to HCBTS.

---

[2]  Neeble-Diamond contends the omission of the jury instructions was an oversight, explaining she "clearly intended to attach [them] to her opening brief as Appendix II. . . ." But an "appendix" attached to a brief is not part of the appellate record, and thus that assertion amounts to a concession that Neeble-Diamond did not intend to include the instructions in her record.

3

**FACTS**

Neeble-Diamond filed her lawsuit against HCBTS in March of 2019, alleging causes of action arising from the termination of her employment as its clinical director, including (1) retaliation in violation of Labor Code section 1102.5; (2) retaliation in violation of Labor Code section 98.6; (3) discrimination in violation of FEHA (Government Code sections 12940, et. seq); (4) retaliation in violation of FEHA; (5) failure to prevent discrimination and retaliation in violation of Government Code section 12940(k) (i.e., FEHA requirement to take reasonable steps to prevent same); (6) wrongful termination in violation of public policy; and (7) declaratory relief.

Neeble-Diamond and HCBTS entered into a series of contracts setting forth the terms of her work; each identified her as an independent contractor. Accordingly, in December 2020, HCBTS filed a motion for summary judgment, arguing that Neeble-Diamond could not prevail on any of her causes of action because she was not its employee. HCBTS relied on the *Borello* test to support its argument. In her opposition, Neeble-Diamond argued the court should apply the *Dynamex* ABC test instead.

In its ruling, the court analyzed whether section 2775—part of the recently enacted Assem. Bill No. 5—mandated application of the *Dynamex* ABC test to this case.[3] The court's apparent focus was on whether section 2783, subdivision (b), which exempts psychology services from application of the *Dynamex* ABC test otherwise provided for in section 2775, governed Neeble-Diamond's services. The court ultimately concluded section 2783 did apply, and thus it was appropriate to apply the *Borello* test for purposes of the summary judgment motion. The court then concluded that, after applying *Borello*,

---

[3] The court was apparently unaware at that point that section 2785 precluded Neeble-Diamond from relying on section 2775 (and thus on the *Dynamex* ABC test) for her work performed before January 1, 2020.

4

triable issues of fact remained bearing on the issue of whether Neeble-Diamond was HCBTS's employee or an independent contractor.

At trial, the parties continued to dispute which test should be applied. HCBTS filed a brief pointing out, apparently for the first time, that the Labor Code statutes enacted as part of Assem. Bill No. 5 were not applicable to this case because Neeble-Diamond had performed her services prior to January 2020.[4]

After Neeble-Diamond argued in response that HCBTS had misconstrued Assem. Bill No. 5, the court explained in some detail why it concluded that "[section] 2775 would be applicable except for the fact that [Neeble-Diamond's] work was done from 2014 to 2017," and thus that "Dynamex does not apply; Borello applies." At that point, Neeble-Diamond had not submitted any proposed jury instructions, and the court directed the preparation of a "proposed jury instruction by the defense to give to the jury on instruction for determining employee versus independent contractor, CACI 3704 without the first sentence? Hang on. I need it to make sure because . . . the court is not going to indicate that it is the plaintiff's burden."

When Neeble-Diamond's counsel asked if "the instruction should include language that it's the defense burden to prove it," the court responded, "I'm not putting anyone's burden at this time."

---

[4] The record surrounding this turn of events is thin, at best, although both parties seem to agree. Neeble-Diamond claims, without any citation to the record, that HCBTS "filed a brief and raised orally the argument that Labor Code section 2785(a) clarifies that Labor Code 2775 and *Dynamex* only apply retroactively in cases concerning wages." She did not include that brief in the clerk's transcript. In its brief, HCBTS states that it "filed a trial brief on the issue, explaining that under Labor Code § 2785 and *Vasquez v. Jan-Pro Franchising Int'l, Inc*. (2021) 10 Cal.5th 944, *Dynamex* did not apply to non-wage-order Labor Code claims based on work done before 2020," but supports the assertion only with a citation to the reporter's transcript in which the court references the "pocket brief," followed by Neeble-Diamond's response to the contention.

The next day, the parties apparently met and conferred off the record about the content of the jury instructions. Whether they agreed to any changes in the proposed instructions, and whether any of those changes related to the *Borello* test, is unknown to us based on this record. The court thereafter allowed Neeble-Diamond to make a record preserving any objections she had to the instructions, and she did so. Neeble-Diamond objected to ten CACI instructions, but offered no objection to CACI No. 3704, which sets forth the *Borello* test.

Five days after the parties met and conferred about the instructions, the court instructed the jury. The specific content of the instructions read to the jury was not reported, and the written instructions are not a part of our record.

The jury was asked to render a special verdict that included this question: "As of March 20, 2017, was Amanda Neeble-Diamond an employee or an independent contractor of Hotel California by the Sea LLC ('Hotel California')?" The jury found she was an independent contractor. Following that question and answer, the jury was instructed that "if you selected independent contractor, then stop here and answer no further questions." Based on that verdict, the court entered judgment in favor of HCBTS.

## DISCUSSION

1. *Inadequacy of Record*

Neeble-Diamond's appeal raises two claims of error based on the content of the jury instructions: (1) the court erred by instructing the jury to decide the employee/independent contractor issue based on the *Borello* test found in CACI No. 3704; and (2) the court erred by failing to instruct the jury that HCBTS had the burden of proof on the issue.

It is the appellant's burden to affirmatively demonstrate error; this rule requires appellant to provide us with a sufficient record to review her claims. (*In re*

6

*Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Error is never presumed and "where the record is silent the reviewing court will indulge all reasonable inferences in support of the judgment." (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 557; *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718.)

An appeal which asserts there were errors in the jury instructions must be supported by a record which establishes the allegedly erroneous content of the instructions. Absent that, we must presume the challenged instruction complied with the law. (*Thomas v. Laguna* (1952) 113 Cal.App.2d 657, 660 ["The giving of an instruction will not be reviewed by an appellate court unless the record sets forth the questioned instruction"]; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.)

Although Neeble-Diamond acknowledges that our record does not include a copy of the instruction she challenges, she argues the omission can be overcome in two ways: first, she asks us to grant her motion to augment the record to include a copy of the jury instructions; second, she claims that the record contains sufficient information to allow us to infer the exact content of the instruction she challenges. We find neither argument persuasive.

Neeble-Diamond did not seek augmentation of the record until after HCBTS filed its respondent's brief relying on the omission in support of a waiver argument. By the time she did—at the same time she filed her reply brief—HCBTS had lost its only opportunity to craft a responsive argument based on the content of those instructions. This delay dooms the request. As explained in *Russi v. Bank of America* (1945) 69 Cal.App.2d 100, 102, "'[e]ven where the matter sought to be added is proper, or the proposed correction is warranted, neither augmentation nor correction is a matter of right; they both may be denied for inexcusable neglect in preparing the record, for delay in presenting the application, or for other reasons.'"

Here, Neeble-Diamond offers no justification for her failure to include the jury instructions in her record. Instead, she explains it was her intention to attach them as an "appendix" to her opening brief. Such appendices, while sometimes helpful to the court, are not part of the appellate record.

In this case, as in *Gelini v. San Francisco* (1962) 199 Cal.App.2d 340, 348, Neeble-Diamond "has made no showing nor offered any reason for what appears to be inexcusable delay" in seeking to augment the record at the same time she filed her closing brief. Therefore, like the court in that case, we deny her request. (*Id.* at 349.)

Neeble-Diamond also argues that even if the record is not augmented, the reporter's transcript contains sufficient information for us to infer the exact content of the instruction she challenges. Specifically, she argues that because the court stated toward the end of trial that it was rejecting her *Dynamex* argument, and planned instead to instruct under *Borello* using "CACI 3704 without the first sentence," we should refer to that standard instruction, eliminate the first sentence assigning the burden of proof to the plaintiff, and assume that is the exact instruction given on the point.

There are two flaws in that approach. First, the court's statement about CACI No. 3704 came the day before the parties met and conferred about the jury instructions, and several days before the instructions were read to the jury. We have no record of the outcome of that meet and confer; we therefore cannot know whether the language of CACI No. 3704 was further modified. Moreover, when the court gave Neeble-Diamond the opportunity to object to the instructions given, she did not object to CACI No. 3704. Those facts support the inference that Neeble-Diamond was ultimately satisfied with the final version of that instruction.

Second, even if we were able to conclude that the standard language of CACI No. 3704, minus the first sentence, was read to the jury, we could not evaluate its propriety standing alone. Instead, "we evaluate the instructions given as a whole, not in isolation." (*People v. Rundle* (2008) 43 Cal.4th 76, 149, disapproved on another ground

8

in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Whatever flaws may have existed in CACI No. 3704 may have been cured by other instructions. Absent the complete record, we must presume the instructions, as a whole, were proper.

  2.  *Employee/Independent Contractor Instruction*

  Even if we were to assume the record was sufficient to demonstrate the facts relied upon by Neeble-Diamond in challenging the propriety of the instructions, we would not agree her arguments support a reversal of the judgment.

  a.  *Borello and Dynamex*

  The parties' dispute was largely over whether the jury should be instructed to decide the employee/independent contractor issue in accordance with the *Borello* test, or the ABC test set forth in *Dynamex.*

  In *Borello*, our Supreme Court explained that "'[t]he principal test of an employment relationship is whether the person to whom the service is rendered has the right to control the manner and means of accomplishing the result desired . . . .'" (*Borello, supra*, 48 Cal.3d at p. 350.) However, "the 'control' test, applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service arrangements." (*Ibid*.)

  The court then identified a group of "additional factors" that bear upon employment status: "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe

9

they are creating the relationship of employer-employee." (*Borello, supra*, 48 Cal.3d at p. 351.)

The Supreme Court made clear that these "individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." (*Borello, supra*, 48 Cal.3d at p. 351.)

For nearly 30 years, the multi-factor *Borello* test provided the default standard for evaluating whether a worker has as an employee or an independent contractor. But in 2018, the Court decided *Dynamex*, in which it declined to apply the *Borello* test to wage-and-hour claims in light of the broad language employed by the Industrial Welfare Commission in defining "employment" for purposes of establishing wage and hour standards. (*Dynamex, supra,* 4 Cal.5th at pp. 936-937, 943.) Instead, the court adopted the three-part "ABC" test, under which a worker is considered an employee "unless the hiring entity establishes (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business, the worker should be considered an employee and the hiring business an employer under the suffer or permit to work standard in wage orders." (*Id*. at p. 964.) Under this test, "the hiring entity's failure to prove any one of these three prerequisites will be sufficient in itself to establish that the worker is an included employee, rather than an excluded independent contractor, for purposes of the wage order." (*Ibid*.)

In 2019, the Legislature enacted Assem. Bill No. 5, which amended the Labor Code to codify the *Dynamex* decision and make it applicable to a variety of issues other than wage and hour claims. (Lab. Code, § 2775.) It was through application of Assem. Bill No. 5 that Neeble-Diamond claimed the *Dynamex* ABC test should be applied at trial in this case.

10

However, section 2785 states that except in cases involving wage and hour claims, or where application of Assem. Bill No. 5 "would relieve an employer from liability," those statutes will apply only to work performed "on or after January 1, 2020." (Lab. Code, § 2785, subds. (b) & (c).) Neeble-Diamond now concedes that "had the trial court used CACI 2705 to instruct the jury pursuant to *Dynamex*, the trial court would have committed error." We agree.

b. *Alternate Instructions*

Despite her concession that the jury instruction she argued for at trial would have been erroneous, Neeble-Diamond argues the court erred by failing to create an instruction that tailored the *Borello* test to focus on the problem of employers who intentionally structure employee relationships with the goal of evading liability. Specifically, she claims "[t]he multi-factor balancing test in CACI 3704 begs questions that the trial court failed to answer about which factors matter and why" and argues "[t]he trial court committed reversible error by failing to craft a jury instruction that prevented subterfuge by taking into consideration [her] serious, credible, and corroborated claims of fraud in light of the history and purposes of the whisteblower provisions of FEHA and the Labor Code." Neeble-Diamond also argues the court erred when it failed to instruct the jury "with the FEHA ABC [t]est in connection with [her] FEHA causes of action."

Both of these arguments fail because Neeble-Diamond made no request at trial for either of the instructions she now claims the court should have given. "'"'In a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion.'"'" (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130-1131 (*Metcalf*).) "Neither a trial court nor a reviewing court in a civil action is obligated to seek out theories plaintiff might have advanced, or to articulate for him that which he has left unspoken." (*Finn v. G.D. Searle & Co.* (1984) 35 Cal.3d 691, 701–702.)

11

If a party wants a tailored version of an instruction such as CACI No. 3704 to address a specific concern, that party must identify the problem before the jury is instructed, and then propose whatever clarifying or supplemental language he or she believes is necessary to address the problem. "'Where, as here, "the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed.*"'" (*Metcalf, supra*, 42 Cal.4th at 1131.)

Neeble-Diamond submitted no proposed instructions to the court; when HCBTS requested the use of CACI No. 3704 to reflect the *Borello* test, the record demonstrates Neeble-Diamond opposed it entirely. Neeble-Diamond never requested any alteration of the CACI language. Under these circumstances, Neeble-Diamond waived any claim that the court erred in failing to instruct the jury in the manner she now advocates.

c.     *Application of FEHA Test for Independent Contractor*

Finally, we note that even if Neeble-Diamond had asked the trial court to give a jury instruction based on "the FEHA ABC" test, the request would have been properly rejected. The FEHA ABC test that Neeble-Diamond points to is found in Government Code section 12940, subdivision (j)(5), which specifies that it applies to cases in which harassment has been alleged pursuant to that subdivision. Because Neeble-Diamond makes no assertion that Government Code section 12940, subdivision (j)(5) has any broader application, and she has alleged no cause of action for harassment under FEHA, there is no basis to conclude the FEHA ABC test would have properly applied to any of her claims.

3.     *Burden of Proof*

Neeble-Diamond argues the judgment must be reversed because the court failed to instruct the jury that HCBTS had the burden of proving she was an independent contractor. Again, because she failed to provide a sufficient record of the jury

12

instructions, the contention is waived. But even if it were not, we would find the contention unpersuasive.

First, we note Neeble-Diamond does not claim the court improperly assigned the burden of proof to her; her claim is that the court failed to assign the burden of proof to anyone. That conclusion is supported by the wording of the special verdict, which asked the jury to decide an abstract question: "As of March 20, 2017, was Amanda Neeble-Diamond an employee or an independent contractor of Hotel California by the Sea LLC ('Hotel California')?"

That question required the jury to decide between two options; it thus implicitly asked the jury to decide which of the two characterizations it found more likely than the other. That equates to a preponderance of the evidence standard. (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1305, fn. 28 [Requiring proof that something is "'more likely than not'" is a preponderance of the evidence standard].)

Employing such a construction, without assigning the burden of proof to either side, would be problematic if the jury could not decide which of the two options was more likely than the other. But when the jury chose between the two, it necessarily concluded that one of the parties satisfied its burden of proof. Here, the jury concluded HCBTS proved by a preponderance of the evidence that Neeble-Diamond was an independent contractor.

We disagree with Neeble-Diamond's claim that HCBTS had the burden of proving independent contractor status in this case. "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.) Thus, in order to prevail on a claim dependent on employment status, the plaintiff must present evidence sufficient to persuade the jury that he or she is an employee. (Evid. Code, §§ 115, 520; *Sargent Fletcher, Inc. v Able Corp.*(2003) 110 Cal.App.4th 1658, 1667 (*Sargent Fletcher*) ["The terms burden of proof and burden of persuasion are

13

synonymous"].)  As explained in *Sargent Fletcher*, "[t]he burden of proof *does not shift* during trial—it remains with the party who originally bears it." (*Ibid.*)

The cases relied on by Neeble-Diamond are distinguishable.  While it is true that the Supreme Court in *Borello* states that "[o]ne seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees" (*Borello, supra,* 48 Cal.3d at p. 349), the case arises out of the Worker's Compensation Act, and the *Borello* court bases its opinion on a statute which explicitly imposes that rule for purposes of worker's compensation hearings (*ibid.*, Lab. Code, § 5705, subd. (a)).[5]  *Bemis v. People* (1952) 109 Cal.App.2d 253, 263-264, is also a worker's compensation case, and thus governed by the same statute.

In *Linton v. DeSoto Cab Company, Inc*. (2017) 15 Cal.App.5th 1208, 1220-1221 (*Linton*), a non-worker's compensation case, the court relied on *Borello* in stating "[i]t is established that '[o]ne seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees.'"  The case does not acknowledge the source of that rule.

The *Linton* court goes on to conclude that the "rebuttable presumption" of employment status found in section 3357 "applies to actions brought under Labor Code provisions falling outside workers' compensation" while acknowledging that section 3350 strongly suggests the opposite (*Linton, supra*, 15 Cal.App.5th at p. 1221).  The court then cites *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040, 1048, and *Cristler v.*

---

[5]	Section 5705, which is located in a chapter that applies to the conduct of workers compensation hearings, states "[t]he burden of proof rests upon the party or lien claimant holding the affirmative of the issue.  The following are affirmative defenses, and the burden of proof rests upon the employer to establish them:  [¶]  (a) That an injured person claiming to be an employee was an independent contractor or otherwise excluded from the protection of this division where there is proof that the injured person was at the time of his or her injury actually performing service for the alleged employer."

14

*Express Messenger Systems, Inc*. (2009) 171 Cal.App.4th 72, 83, to support the wider application of section 3357. However, while both of those cases do apply section 3357 outside the context of worker's compensation, neither suggests why it would be appropriate to do so here. None of these cases persuades us that an exception to the general rule which places the burden of proving employment status on the plaintiff would apply in a non-worker's compensation case.

Ultimately, much of Neeble-Diamond's argument seems to conflate the burden of proof with the burden of producing evidence to rebut a presumption. As explained in *Sargent Fletcher, supra*, 110 Cal.App.4th at pp. 1667-1668, "Unlike the burden of proof, the burden of producing evidence *may* shift between plaintiff and defendant throughout the trial. [Citations.] Initially, the burden of producing evidence as to a particular fact rests on the party with the burden of proof as to that fact. [Citations.] If that party fails to produce sufficient evidence to make a prima facie case, it risks nonsuit or other unfavorable determination. [Citations.] But once that party produces evidence sufficient to make its prima facie case, the burden of producing evidence *shifts* to the other party to refute the prima facie case. [Citations.] Even though the burden of producing evidence shifts to the other party, that party need not offer evidence in reply, but failure to do so risks an adverse verdict. [Citations.] Once a prima facie showing is made, it is for the trier of fact to say whether or not the crucial and necessary facts have been established."

In this case, the initial burden of producing evidence to establish her employment status rested with Neeble-Diamond. If a presumption of that status were in effect, she might have relied upon it to establish her prima facie case. But it was only after she had introduced sufficient evidence to support a finding in her favor—and thus avoid a non-suit—that the burden shifted to HCBTS to produce evidence which demonstrated the relationship was actually one of an independent contractor. That shift

15

in the burden of production, however, did not alter the burden of proof, which remained with Neeble-Diamond as the plaintiff.

4.      *Sufficiency of Evidence*

Neeble-Diamond's final argument is that the evidence is insufficient to support the conclusion that her services for HCBTS were performed as an independent contractor. However, in her closing argument to the jury, Neeble-Diamond's counsel conceded the evidence was disputed as to one factor in the *Borello* test—i.e., whether the parties think "'they had an employer-employee relationship'"—and that "two [factors, i.e., tax treatment and whether the parties had a contract] cut in favor of the defense." A determination in HCBTS's favor on those factors would be sufficient to support a finding of independent contractor status under the *Borello* test, and Neeble-Diamond concedes as much.

What Neeble-Diamond is actually arguing is that the evidence would have been insufficient to establish an independent contractor relationship if one of the other tests she advocated for had been employed. As we have already disposed of her contention the court erred by failing to instruct the jury in accordance with one of those other tests, we need not address the argument further.

## DISPOSITION

The judgment is affirmed.  HCBTS is entitled to its costs on appeal.


GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

17