[Civ. No. 5947. Third Appellate District.—April 8, 1938.]

ROBERT MITROVITCH, a Minor, etc., Respondent, v. ALBERT GRAVES, Appellant.

Yale S. Kroloff, Rich, Weis & Carlin and Richard H. Fuidge for Appellant.

Manwell, Sperbeck & Manwell for Respondent.

THOMPSON, J.—A judgment for $600 was rendered against the defendant in accordance with the verdict of a jury which was returned in a suit for damages for personal injuries sustained by the plaintiff as a result of having been struck by an automobile while he was walking across a street in Marysville.

The appellant contends that the verdict and judgment are not supported by the evidence for the reason that it appears, as a matter of law, the plaintiff was guilty of contributory negligence in violating the provisions of section 562 of the Vehicle Code by failing to "yield the right of way" to the automobile, while he was walking across Fifth Street at a place other than the regular pedestrians' pathway.

The accident occurred midway in a block on Fifth Street in Marysville at 8 o'clock on the evening of November 4, 1936. It was dark, but the street was well lighted in that vicinity. The street lamps were burning, and the lights from a Texaco service station near by illuminated the highway at that point so that an object could be plainly seen at a considerable distance. Fifth Street extends east and west. It is paved and fifty-six feet in width between the curb lines. Along the center of Fifth Street there are double tracks of the Sacramento Northern Electric Railroad. These tracks occupy a space of about sixteen feet in width, leaving twenty feet of the street unobstructed on either side thereof. We assume the rails are flush with the surface of the street and that they do not obstruct free use of the street throughout its entire width, when trains are not passing. I Street intersects Fifth Street at right angles on the easterly side of the block in which the accident occurred. J Street intersects Fifth Street at right angles one block west from I Street. The Texaco service station occupies about fifty feet of space at the northwest corner of I and Fifth Streets. Directly across Fifth Street, at the southwest corner of I and Fifth Streets there is a space occupied by used cars.

The plaintiff, at the time of the accident, was a high school student, seventeen years of age. At 8 o'clock on the evening of November 4, 1936, accompanied by his friend, Jack Dunn, the plaintiff drove his automobile west along Fifth Street. When he reached I Street he drove across to the southerly side of Fifth Street and stopped in front of the used car premises, where he met and entered into conversation with Mr. Fenton, the proprietor of that place, who was an acquaintance of the plaintiff. As they stood on the sidewalk conversing, George Myers, another friend of plaintiff, drove his truck northerly up I Street, turned to his left and parked near the curb line on the northerly side of Fifth Street in front of the Texaco service station. Observing the plaintiff on the opposite side of Fifth Street, Myers hailed. He remained seated in the cab of his truck. There were then no other machines in sight on Fifth Street, except one car which was parked on the northerly side at a considerable distance ahead of the truck. The plaintiff immediately crossed Fifth Street and stood with his right foot on the left running-board of the truck, while he talked for a few moments with his friend Myers. Having completed their conversation, the plaintiff turned, looking to his right whence approaching cars might be expected, intending to recross Fifth Street to the place where he had left his machine. Until that time, no automobiles had passed either up or down Fifth Street. No moving cars were then in sight. There was apparently no traffic at that time. The plaintiff said:

''I had a foot on the running board and turned like this (to his right) and took about two steps and I stopped when I saw two cars coming towards me. I looked towards . . . Marysville. That would be my right side as I looked. I looked east. I saw two cars coming towards me. One was a black coupe, the one closest to me. The one that was furtherest was a sedan. When I first saw those two cars they were in the intersection at I Street. . . . The coupe which was in front, was closer to the north line of the north track. . . . When I observed the automobile coming I stopped. The automobile came closer and as the coupe passed me I turned to watch it go down the street to see if any cars were coming in the other direction before I walked across and I turned back to see where the sedan was and when I was struck and I didn't quite get to see the sedan. I was

just turning from looking in this (southerly) direction about straight across the street when I was struck. I was standing still when I was struck."

This evidence is not contradicted. No other witness testified to the striking of the plaintiff by the automobile. The other witnesses did not see the automobile strike the plaintiff. Mr. Myers, the truckman, said that he parked his truck within a foot of the north curb of Fifth Street, where it remained until he finished talking with the plaintiff, and that the moment the conversation was completed and the plaintiff turned away, he started his machine and drove only about fifteen feet when he heard the crash caused by defendant's machine striking the plaintiff a blow that hurled him several feet to the railroad track where his body was found. He was unconscious and very badly injured. Immediately after the crash Mr. Myers saw the two automobiles which passed his truck, the latter of which he recognized as the sedan belonging to the defendant. He said:

"I saw a car swerve down the street. I saw an automobile after I heard the crash. I saw two automobiles. I saw one of them swing across the street and almost hit the gutter [on the south side] and saw the other one up to the next corner . . . the corner of Fifth and J Streets. Both cars were heading towards Yuba City. The coupe was ahead of the sedan. The sedan was passing the coupe at the corner of J Street. The sedan passed the coupe at the corner of Fifth and J Streets."

Mr. Myers promptly stopped his truck and went to the assistance of the plaintiff. At the same time Dunn and Fenton, who still stood across the street, hearing the crash, and seeing the plaintiff lying near the northerly rail of the track, also rushed across to aid him.

In spite of the crash which attracted the attention of everyone in the immediate vicinity and in spite of the collision which was forceful enough to hurl the plaintiff a considerable distance and to seriously injure him, and to break the headlamp of defendant's machine and cause the car to swerve nearly to the opposite side of the street, the defendant failed to stop, but, on the contrary, increased his speed, passing the coupe as it reached the next corner. The defendant claims that he did not realize he had hit a person, or that the headlamp was broken, until after he had gone

to bed that night, at his wife's request he went out to the garage to place a blanket over the hood of his machine. When he discovered the broken lamp he immediately removed it and carried it into the house.

It was so light at the point where the accident occurred that the group of men who stood on the opposite side of the street plainly saw and recognized Mr. Myers as he sat in the cab of his truck. Yet the defendant claims he did not see the plaintiff as he stood in the street a few feet from the truck of Mr. Myers, and he denies that he knew he had struck a person at all. The implied finding of the jury that the defendant was guilty of negligence which proximately caused the injuries to plaintiff infers that they believed the defendant knew he had struck and injured the plaintiff. The fact that he failed to stop, that he hastened away, and that he immediately removed the broken headlamp from his automobile, furnish circumstances from which the jury was warranted in assuming he knew of the accident and was attempting to conceal his participation in the casualty. At least there is ample evidence to support the implied finding of the jury that the accident occurred through the negligence of the defendant.

The question as to whether the plaintiff was guilty of contributory negligence by standing in the street near the parked truck waiting for the two automobiles to pass, was a problem for the determination of the jury under the circumstances of this case. In effect, the jury decided that a reasonably prudent man would not have been expected to anticipate that the drivers of the approaching cars would fail to see a pedestrian standing in the street in plain view, as the plaintiff was, or that either of them would swerve from their course and strike him down. Even though reasonable minds may differ regarding that conclusion, it is controlling in this case, since there is substantial evidence to support it.

It may not be said under the circumstances of this case the plaintiff was guilty of contributory negligence merely because he attempted to walk across Fifth Street elsewhere than along the regular pedestrians' pathway. In determining that question the lack of traffic and all the other surrounding circumstances must be taken into consideration. To attempt to walk across a busy city thoroughfare amid

congested traffic might be foolhardy, while it may be perfectly safe to cross a quiet street of a country town where there is little active traffic. In the present case there was a well-lighted open street fifty-six feet in width upon which not a moving automobile had been seen for many minutes. Not a vehicle had passed along Fifth Street in either direction during the time the conversations were carried on with Fenton on one side of the street and with Myers on the other side. In passing the parked truck and the plaintiff as he stood in plain view a few feet therefrom, the approaching coupe and sedan had a monopoly of the balance of the street which was not occupied. The railroad tracks did not obstruct their course. Assuming that the truck extended into the street ten feet from the curb line and that the plaintiff stood eight feet beyond the truck, the approaching cars would still have ten feet of clear space before reaching the center of the street. The plaintiff should have been seen as he stood in clear view in the open street. The evidence shows that it was so light where the accident occurred that Fenton and Dunn recognized the features of Mr. Myers as he sat in the cab of his truck across the street. The evidence indicates that the plaintiff did "yield the right of way" to the approaching machines. When he left the truck he turned and looked toward the east. He saw two automobiles coming. He stopped and remained stationary, watching them approach and waiting for them to pass.

The appellant contends that the plaintiff was guilty of contributory negligence for failing to "yield the right of way" for the approaching automobiles as required by section 562 of the Vehicle Code. That section provides:

"(a) Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway.

"(b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

The phrase employed in the statute which requires a pedestrian crossing a street or roadway at a point other than the regular marked crosswalk, to "yield the right of way to all vehicles" does not mean that a pedestrian ventures upon a public highway or street at his peril, or that he

must flee at sight of an approaching vehicle. The phrase merely means that when the course of an automobile along a highway meets with that of a person who seeks to walk across the street or roadway at a point other than along a marked crosswalk, under circumstances which render a collision likely, the pedestrian must stop and permit the vehicle to pass ahead of him. Yielding the right of way, within the meaning of the statute, merely means that the pedestrian shall defer to the driver of the vehicle and wait to permit the machine to pass ahead of him. That section is not intended to grant to vehicles a monopoly of streets or highways to the exclusion of pedestrians. The rule applies only under circumstances when the opposite courses of the vehicle and the pedestrian render it dangerous for both to proceed on their respective ways without delay. Under such circumstances the pedestrian must stop to permit the vehicle to precede him. That is exactly what the plaintiff did on that occasion. He stopped and remained stationary to permit the two machines to pass. He actually yielded the right of way to the approaching machines. The foremost machine successfully passed him without difficulty. While he turned to see that the way was otherwise clear for him to proceed across the street after the machines had passed, the sedan which followed the coupe evidently swerved from its course and struck the plaintiff. The question to be determined in this case is, Should a reasonable person have anticipated that the driver of the second car might fail to see him or that he would suddenly change his course so as to strike the plaintiff? The verdict of the jury must be deemed to have determined that question adversely to the defendant. We may not hold as a matter of law that the plaintiff was guilty of contributory negligence for failing to "yield the right of way" or otherwise, under the circumstances of this case.

The case of *Chase* v. *Thomas*, 7 Cal. App. (2d) 440 [46 Pac. (2d) 200], upon which the appellant chiefly relies, is not in conflict with what has been previously said in regard to the subject of contributory negligence for failure to yield the right of way. The facts of the Chase case are vitally different from those of the present action. In that case the plaintiff did not yield the right of way. He failed to stop for an approaching machine to pass ahead of him. He deliberately continued on his way and stepped into the very

pathway of the machine, without warning. The driver was powerless to stop and avoid the collision. In the present case the plaintiff did stop and yield the right of way to permit the approaching machines to pass ahead of him. He fulfilled the requirements of section 562 of the Vehicle Code. The first machine successfully passed him. The defendant's automobile, evidently running so closely behind the coupe that he failed to see the pedestrian standing in the street, suddenly and unexpectedly changed his course so as to strike the plaintiff. The jury may have assumed his subsequent conduct indicated that he was convinced his negligence had led to serious injuries and possibly the death of a pedestrian.

The distinction between the facts of the Chase case and the present one is clearly expressed in that opinion as follows:

"Plaintiff had no right to assume that drivers of such vehicles would slow down in order to give way to him. He was under the positive duty, under the provisions of the statute, to yield the right of way to others. He violated this statutory provision. Instead of allowing the automobile *to pass in front of him he stepped directly in front of it. The driver of the car was afforded no opportunity to stop after plaintiff stepped into the way.*"

We are persuaded there is substantial evidence in this case to support the implied finding of the jury that the plaintiff yielded the right of way to the approaching automobiles, and that he is not, as a matter of law, guilty of contributory negligence.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.