161 Cal.App.2d Supp. 842 (1958)
THE PEOPLE, Respondent,
v.
JOHN ELMER MILLER, Appellant.
California Court of Appeals. 
June 11, 1958.
 John Elmer Miller, in pro. per., for Appellant.
 Stanley Weinstein, City Prosecutor (Alhambra), for Respondent.
 BISHOP, P. J.
 The defendant, found guilty by the trial court, sitting without a jury, of failing to yield the right of way when making a left-hand turn at an intersection, was sentenced to pay a fine of five dollars. Measuring his grievance, not by the amount of the judgment, but by the principles he deems involved, the defendant has appealed. We are satisfied [161 Cal.App.2d Supp. 844] of two things: that the evidence supports the conviction; that the problems presented by left-hand turns at busy intersections justify us in commenting at some length, as we affirm the judgment.
 The path of a motorist who purposes to drive straight across an intersection and that of one who intends to make a left turn will, of necessity, cross. If they approach the space, that is common to both paths, at the same time, unless one makes way for the other, they collide. In the absence of legislation, neither has a right superior to the other, although each has the equal duty of taking care to avoid a collision. The Legislature has taken notice of the problems created by the conflicting rights and has enacted section 551 of the Vehicle Code, giving preferred rights to one or the other of the motorists, depending on the conditions recognized in the section.
 That section, since its amendment in 1957, reads as follows: "(a) The driver of a vehicle intending to turn to the left at an intersection shall yield the right of way to any vehicle which has approached or is approaching the intersection from the opposite direction and which is so close as to constitute a hazard at any time during the turning movement."
 "(b) Said driver turning left having so yielded and having given a signal when and as required by this code may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the driver making the left turn."
 The 1957 amendments made no change in subdivision (b). Before 1957, subdivision (a), read: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." (We have added emphasis to the words omitted in the 1957 version.) [1] It will be noted that by the addition of the words "which has approached or," the premise of the conclusion reached by us in People v. Bull (1956), 144 Cal.App.2d Supp. 860, 862 [301 P.2d 311], has been destroyed; the necessity of yielding the right of way is no longer limited to vehicles in motion, but applies as well to those not in motion, if they have arrived so close to the intersection as to constitute a hazard to the driver as he makes his left turn.
 There are several simple, perhaps obvious, facts that should be kept in mind. The Legislature, in section 87 of the Vehicle Code, has defined "right of way" as "the privilege of the [161 Cal.App.2d Supp. 845] immediate use of the highway." No problem of the right of way arises until two motorists desire to make use of the same portion of a highway at approximately the same time. The touchstone adopted by section 551 to determine who has the right of way, in the first instance, is "hazard." This word connotes not a certainty, but a risk. We read in Caminetti v. Guaranty Union L. Ins. Co. (1942), 52 Cal.App.2d 330, 333 [126 P.2d 159, 163]: "Along with other meanings, the Standard Dictionary defines the noun 'hazard' as exposure to the chance of loss or injury, and the adjective 'hazardous' as involving risk of loss." In Hough v. Contributory Retirement Appeal Board (1941), 309 Mass. 534 [36 N.E.2d 415, 418], the court said: "a hazard is a danger or risk lurking in a situation ..." A similar conception appears in The Philadelphia (1912), 199 F. 299, 302: " 'Risk of collision' means 'chance,' 'peril,' 'hazard,' or 'danger of collision' merely, and not immediate danger."
 Two cars that seem about to try to occupy the same space at the same time, are, obviously, both "hazards"; each is a hazard to the other. If both cars are stopped by a red signal at an intersection, generally speaking each becomes a hazard to the other at the moment the signal turns green, releasing them both. But since the adoption of section 551, Vehicle Code, the rights of the two drivers under the situation depicted, are not equal; one is given the right of way.
 We find similar provisions of the code respecting rights of way applied in Giles v. Happely (1954), 123 Cal.App.2d 894, 898 [267 P.2d 1051, 1053], where it is said: "The correct rule is accurately stated in People v. McLachlan [36 Cal.App.2d Supp. 754 (93 P.2d 280, 282)], by Mr. Presiding Judge Shaw, at page 757, as follows: 'Questions of right of way arise between two users of the highway only when there is danger of a collision between them if both proceed on their respective ways without delay. (Mitrovich v. Graves (1938), 25 Cal.App.2d 649, 654, 655 [78 P.2d 227]; Cowan v. Market St. Ry. Co. (1935), 8 Cal.App.2d 642, 646, 647 [47 P.2d 752]; Switzer v. Baker (1916), 178 Iowa 1063 [160 N.W. 372, 375].) The case of Mitrovich v. Graves, supra, involved the provision of section 462 of the Vehicle Code which requires a pedestrian crossing a roadway at a point not within a crosswalk to "yield the right of way to all vehicles upon the roadway," and the court said that it "merely means that when the course of an automobile along a highway meets with that of a person who [161 Cal.App.2d Supp. 846] seeks to walk across the street or roadway at a point other than along a marked crosswalk, under circumstances which render a collision likely, the pedestrian must stop and permit the vehicle to pass ahead of him. ... The rule applies only under circumstances when the opposite courses of the vehicle and the pedestrian render it dangerous for both to proceed on their respective ways without delay. Under such circumstances, the pedestrian must stop to permit the vehicle to precede him." In Switzer v. Baker, supra, the court had under consideration a city ordinance providing that "pedestrians are given the right of way over the crossings at street intersection," and said that such legislative regulations of the right of way mean "that, when two or more persons moving in different directions approach a crossing at the same time or in such manner that if both or all continue their respective courses there is danger of collision, then the one having the preference is entitled to the first use of such crossing, and it is the duty of others to give him reasonable opportunity to do so." ' "
 [2] It remains true that he to whom the right of way has been given is not thereby relieved of the duty of remaining alert. We quote from Powell v. Bartmess (1956), 139 Cal.App.2d 394, 401 [294 P.2d 150, 155]: "As was said in Donat v. Dillon, [192 Cal. 426, 429 (221 P. 193)]: 'Assuming, therefore, that the defendant had the right of way, he was required to proceed across the intersection in a careful and prudent manner, ever watchful of the direction in which danger was most likely to be apprehended. In Allin v. Snavely [100 Cal.App.2d 411, 414 (224 P.2d 113, 115)], this court remarked: 'Under traffic conditions prevailing upon the highways of California ordinary care frequently requires the operator of an automobile who has the right of way to yield in order to avoid disastrous consequences although he may have entered an intersection first and therefore legally be entitled to the right of way.' " [3] But it is also true that the one given the right of way may, until put on notice to the contrary, assume that the one whose duty it is to yield the right of way will do so. In Baumert v. Govaker (1956), 143 Cal.App.2d 691, 695 [299 P.2d 964, 966], it is stated: "Under section 551, subdivision (a), of the Vehicle Code it was defendant's duty to yield the right-of-way if plaintiff was so close to the intersection as to constitute an immediate hazard. Plaintiff, if free from negligence, would have had the right to expect defendant to obey the law in this particular, unless he knew or in the [161 Cal.App.2d Supp. 847] exercise of ordinary care would have known that defendant was not intending to yield the right-of-way."
 [4] Turn about is fair play, and so it has been provided ( 551, subd. (b)) that, the driver turning left who has yielded the right of way to those who constituted a hazard, if both he and they continued on their ways, is in turn entitled to the right of way over those drivers who had not been hazards but, due to the delay of his yielding, have become competitors of his for the immediate use of the portion of the highway both wished to occupy. Of necessity, those whose duty to yield is governed by subdivision (b) of section 551, are those who were not hazards, as the problem of the left turn was first faced, but who have become hazards while he who was making the left turn either stopped his progress, or slowed down, in order to yield the right of way. If subdivision (a) is interpreted as requiring one making a left turn to yield the right of way to all who become hazards, no situation is left for subdivision (b) to cover.
 These facts are clear. A motorist desiring to make a left turn is under no duty to yield the right of way to all those cars who were in line back of the car or cars that constituted a hazard; he has the right of way over those who were not a hazard until he yielded. Again, those in line behind the driver or drivers making a left turn who yielded, and then were given the right of way, do not inherit the right of way by the right of succession; they must yield to those that constitute a hazard to them.
 "Who had the right of way?" will often be a close question of fact, but the difficulty of decision is inherent in the situation, it is not the fault of the rules prescribed. It was a close question in the case under review, but as we stated at the outset, the answer given by the trial court was supported by the evidence.
 [5] The defendant, it disclosed, was driving the third car in line proceeding in a westerly direction, at the same time that a car, driven by a police officer with another officer as a passenger, was the third of three cars driving east. As the two cars ahead of the police car reached Garfield Avenue, they turned south (to the right) causing the two cars in front of defendant's car, to proceed slowly as they turned left and south into Garfield. The police car did not turn south, but kept on straight ahead on Mission, until it was brought to a sudden stop to avoid a collision with defendant's car which had made a left turn, as had the two cars that it was following. [161 Cal.App.2d Supp. 848] The police car was two-thirds its length in Garfield when it was brought to a stop some 5 to 8 feet from the right rear of defendant's car. All cars in the picture thus sketched were being driven well within legal speed limits, those coming from the west at 15 miles per hour, the defendant and his companions some 5 miles an hour during the period of their left turns.
 It no doubt appeared to the trial judge that the police car, not because of its occupants, but because of its near approach, constituted a hazard as the defendant was about to make his left turn, and it was his duty to yield to it the right of way. Whether or not the two cars just ahead of the defendant took or were properly yielded the right of way is not determinative of the matter. If they had the right of way that fact did not serve to bestow it upon the defendant. Whether he had it, depended on the facts affecting him, not on those affecting those ahead of him. It is evident that the trial court was not persuaded by the defendant's testimony that a car, stopped one-half over the south curb line of Mission Road had caused defendant's car to come to a standstill south of the center line of Mission Road, before the police car entered Garfield, and that this, not defendant's failure to yield the right of way as he crossed the center line, was the reason he was in the path of the officers' car.
 The failure of the People to call a third officer, who had been in a position to witness the events that made up the case for the People (but who was not shown to have done so) did not require the trial court to infer that, if called, he would have testified contrary to the two officers. (Davis v. Franson (1956), 141 Cal.App.2d 263, 270 [296 P.2d 600, 604-605]; and see annotation, 135 A.L.R. 1375, 1376, citing California cases.)
 While the trial court was authorized to order an official reporter to "take down in shorthand all the testimony" etc., (Code Civ. Proc., 274c), it was not required to order that it be done at public expense (Gov. Code, 69952, even if it be that that section is still applicable since the reference to it was eliminated from 274c in 1955).
 We find no reason to reverse the judgment. It is affirmed.
 David, J., concurred.
 SWAIN, J.
 I concur in the judgment but I do not agree with that part of the opinion which states: "the driver turning [161 Cal.App.2d Supp. 849] left who has yielded the right of way to those who constituted a hazard, if both he and they continued on their ways, is in turn entitled to the right of way over those drivers who had not been hazards but, due to the delay of his yielding, have become competitors of his for the immediate use of the portion of the highway both wished to occupy." This interpretation is more merciful to left turners but it leaves the former difficulties in the section which I believe the Legislature intended to eliminate.
 Vehicle Code, section 551, as amended in 1957, does not mean that only those through cars close enough to constitute a hazard at the time the left turner first yields, have the right of way but it also gives other through cars the right of way which, while he is yielding, approach so closely as to constitute a hazard at any time during his turning movement. If it were otherwise, the words "hazard at any time during the turning movement" would not carry out the obvious legislative intent. To be more specific, if there is a solid line of motorists who purpose to drive straight across the intersection, a driver intending to make a left turn may not cut through that line but must wait until those drivers have crossed the common space no matter how many cars are in that solid line. He, then, has the right of way over other through traffic, approaching the intersection, which is far enough therefrom so that it does not constitute a hazard at any time during his turning movement as provided in subdivision (b) of said section.
 The 1957 amendment deprives a motorist intending to make a left turn of rights which he theretofore had and may require him to wait much longer to use the common space than formerly. It may also congest traffic behind him but it establishes a clear cut rule which the Legislature, doubtless, believed would reduce accidents.