Opinion
BEDSWORTH, J.
This case raises the issue of what constitutes “approaching traffic” to which a driver must yield the right-of-way before *Supp. 3 making a left turn or U-turn. While we are loathe to add to California’s brobdingnagian body of case law—especially for an infraction—the question badly needs attention.
Vehicle Code section 21801, subdivision (a), provides: “The driver of a vehicle intending to turn to the left or to complete a U-turn at an intersection . . . shall yield the right-of-way to all vehicles approaching from the opposite direction which are close enough to constitute a hazard at any time during the turning movement . . . .” (Italics added; unless otherwise indicated, all further statutory references are to the Vehicle Code.)
In the case before us, appellant, having stopped southbound in a left-turn pocket for a red light, executed his turn as soon as the light turned green and before traffic in the opposite direction could move. He argues he did not violate the statute since northbound traffic, being stationary at the time he turned in front of it, was not approaching within the meaning of section 21801.
We would have rejected this argument out of hand were it not for the rather troubled history of the law in this area. Having reviewed that history, however, and being cognizant of the impact of the rule not only for traffic control but also for determination of civil liability, we feel compelled to address the issue.
The rule embodied in section 21801, subdivision (a), was originally set forth in section 551, subdivision (a),[1] as follows: “The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.” (Italics added.)
This seemed to work just fine until 1956, when another appellate department published People v. Bull (1956) 144 Cal.App.2d Supp. 860 [301 P.2d 311]. Bull dealt with a situation identical to ours and dissected section 551, subdivision (a), with a precision not previously brought to bear on it. After carefully parsing the statute, that court held that the complaint before it did not correctly charge the offense and reversed Mr. Bull’s conviction.
But it did not stop there. In dicta, the court noted, “It must be concluded, further, that the evidence failed to show that the defendant was guilty of any offense. There was, of course, no car other than the defendant’s within the intersection and none that might be said to be approaching, as the defendant *Supp. 4 made his left turn. This is so, because all others, involved, were stationary and so not approaching. It would be a contradiction in terms to say that a standing car was approaching. But the word is used in the statute, and may not be discarded.” (People v. Bull, supra, 144 Cal.App.2d at p. Supp. 862.)
In response to the Bull court’s suggestion, the Legislature amended section 551 the following year to require that left- or U-tuming drivers yield to any vehicle “which has approached or is approaching.” (Italics added.) The year after that, the Bull court held that “the necessity of yielding the right of way is no longer limited to vehicles in motion, but applies as well to those not in motion, if they have arrived so close to the intersection as to constitute a hazard to the driver as he makes his left turn.” (People v. Miller (1958) 161 Cal.App.2d Supp. 842, 844 [327 P.2d 236].)
This laid the issue to rest for 30 years, but in 1988 it sprang back to life like some kind of statutory zombie when the Legislature inexplicably deleted the phrase “which has approached,” from section 21801, subdivision (a). This essentially returned the law to its pre-Bull form and breathed life back into the argument that drivers stopped at a signal can turn left in front of opposing traffic when the signal changes if they can do it quickly enough.
Simply stating the proposition in plain language seems to refute it. No one can seriously argue allocation of right-of-way should be reduced to a contest of reaction times. Putting people into 4,000-pound, combustion-powered, gasoline-laden machines; stressing them out in a daily commute; and then telling them right-of-way is simply a matter of whether they are quick enough to “get off the line” before the other drivers seems like such a patently bad idea that it would be insulting to ascribe it to the Legislature. And we will not.
We are cognizant of the rule of State of South Dakota v. Brown (1978) 20 Cal.3d 765 [144 Cal.Rptr. 758, 576 P.2d 473], that reenactment of a statute implies approval of prior judicial interpretations of the words and phrases used in the statute. (Id. at p. 774.) And we acknowledge the rule that “[w]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation.” (Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P2d 905], italics added, disapproved on another point in County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn. (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835].) Appellant’s argument, based on these cases, that the Legislature, *Supp. 5 having deleted any reference to stationary vehicles, must have intended to restore the rule of Bull, supra, 144 Cal.App.2d Supp. 860, is neatly crafted and assiduously researched, but ultimately unconvincing.
In fact, there simply was no “rule of Bull." Appellate department decisions are not binding authority, especially with regard to dicta therein, so there was never a rule capable of “restoration” by the subsequent legislative amendment.
More importantly, the “rules” appellant cites were, after all, self-constructed by the courts to guide them in determining the intent of the Legislature. The ultimate task before us is not to grade appellant’s argument or harmonize legislation and prior appellate interpretation, but to discern the Legislature’s intent. (Landrum v. Superior Court (1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352].)
Penal Code section 4 provides, “The rule of the common law, that penal statutes ought to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.” This rule applies with equal force to penal provisions of other codes such as the Vehicle Code. (People v. Van Alstyne (1975) 46 Cal.App.3d 900, 912, fn. 10 [121 Cal.Rptr. 363]; People v. Oviedo (1951) 106 Cal.App.2d 690, 693 [235 Cal.Rptr. 612]; People v. Sciortino (1959) 175 Cal.App.2d Supp. 905 [345 P2d 594] [construing former § 515]; People v. Stipp (1961) 190 Cal.App.2d Supp. 883 [12 Cal.Rptr. 476] [construing former § 20007].)
Approaching this statute “with a view to effect its objects,” we are absolutely convinced that the legislative intent was to interpret “approaching” as a reference to direction rather than motion. We hold that a fair interpretation of the words “approaching from the opposite direction” includes all vehicles coming from that direction whether or not their progress has been momentarily interrupted by traffic control devices.
It may be that the Legislature could more clearly have expressed itself with a word like “opposing” or “facing”; but nothing in the law requires such clarity, and one need only spend a few minutes with a thesaurus to realize this is an awkward concept to phrase. The wording they came up with is plenty clear enough for most people, and we are satisfied the driving public correctly understands the section. As long as common usage recognizes “traffic that has stopped” (an oxymoron) and “traffic that is moving” (a redundancy), we see no reason why the Legislature cannot employ such usage in referring to stationary “approaching” cars.
*Supp. 6 To hold otherwise would encourage semantic precision, and words like “diametrical,” at the expense of the understanding of most motorists. It would also encourage traffic patterns unimaginably masochistic. If that was the Legislature’s intent, it will have to speak more clearly; otherwise, the law is clear enough.
Judgment affirmed.
Rylaarsdam, P. J., and Owen, J., concurred.

 It may be that part of the problem is what once took 551 laws now takes 21,801.