Filed 3/18/13  P. v. Noriega CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B236018 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA091006) |
| v. | |
| LUIS MIGUEL NORIEGA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tia Fisher, Judge.  Affirmed.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant Luis Miguel Noriega of second degree murder (Pen. Code, § 187, subd. (a)) (count 1), evading an officer causing death (Veh. Code, § 2800.3, subd. (b)) (count 2), leaving the scene of an accident causing death (Veh. Code, § 20001, subd. (a)) (count 3), unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) (count 4), and receiving stolen property (Pen. Code, § 496d, subd. (a)) (count 5). Noriega waived his right to a jury trial and admitted that he had a prior conviction for receiving stolen property, a motor vehicle, and unlawful taking of a vehicle (Pen. Code, §§ 666.5, 496d; Veh. Code, § 10851). Noriega was sentenced to 20 years to life in state prison, consisting of 15 years to life on count 1; the midterm of four years on count 2, to run concurrently to count 1; the upper term of four years on count 3, to run consecutively to count 1; one-third the midterm of three years, or one year, on count 4, to run consecutively to count 3; and the midterm of three years on count 5, to run concurrently to count 1.

Noriega contends on appeal that the trial court erred by admitting into evidence as a business record a report regarding the mechanical soundness of the stolen vehicle, and by admitting expert testimony based on data retrieved from an "Event Data Recorder" (EDR) without first holding a *Kelly*[1] hearing and finding the forensic use of such data was generally accepted. He further contends that cumulative error requires reversal of the judgment of conviction. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Police Pursuit and the Collision

On June 17, 2010, Raquel Hernandes reported to police that her 2001 blue Chevrolet Tahoe had been stolen. The morning of the following day, Baldwin Park

---

[1] *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*).

Police Department Officer Norman Gonzalez was on patrol and conducted a random license plate check on a blue Tahoe. As the Tahoe, driven by Noriega, began heading toward Syracuse Avenue on Ramona Boulevard, Officer Gonzalez's computer indicated the Tahoe had been reported stolen the previous day and had not been recovered. Officer Gonzalez followed the Tahoe, which drove off at a high rate of speed. When Officer Gonzalez saw the Tahoe begin driving eastbound in the westbound lanes of traffic, he activated his sirens and lights to "Code Three," which started a digital image recording device in the patrol car.

Noriega passed through several intersections without slowing, driving at about 65 miles per hour in a 40-mile-per-hour zone. Officer Gonzalez saw a thick plume of smoke emanate from the Tahoe's tires as Noriega made a turn. Noriega made several more turns and Officer Gonzalez briefly lost sight of the Tahoe but saw another patrol vehicle, driven by Officer Joseph Coda, pursuing the Tahoe ahead of Officer Gonzalez. Both police vehicles were driving east in the eastbound lanes of Ramona Boulevard, while Noriega was driving east in the westbound lanes.

Noriega made two more turns, briefly driving in the appropriate lane with the flow of traffic. At the intersection of Ramona Boulevard and Francisquito, Noriega changed from the number one lane into the number two lane and collided with a 1999 Chevrolet Lumina driven by Walter Williams. After the Tahoe collided with the Lumina, the Lumina burst into flames. Williams had been partially ejected from the Lumina and was engulfed in flames. He died at the scene.

Noriega exited the Tahoe and began running. Officer Gonzalez pursued him on foot, yelling at him to stop. Albert Mora, a student at a nearby college, managed to stop Noriega after Mora saw Noriega was being chased by Officer Gonzalez. Noriega was placed under arrest by Officer Gonzalez. A search of his person found a flat tip screwdriver and a lock socket used on vehicle lug nuts. On the floorboard inside the Tahoe, officers found a ring with three keys, one of which was a shaved vehicle ignition key commonly used by car thieves to start a vehicle after damaging the ignition switch. The Tahoe ignition switch and steering column had been damaged.

3

## II.  The Investigation and Accident Reconstruction

The police pursuit of Noriega lasted less than two minutes, during which time Noriega traveled about 2.2 miles.

Police investigators obtained surveillance videos from nearby Premier Career College and from Spy Micro, a business about 150 feet away from the intersection of Ramona Boulevard and Francisquito.

Officers Ted Espanto and Andrew Velebil were delegated the task of investigating the collision.  Officer Espanto was assigned to the traffic accident investigation team.  As part of his duties in that capacity he attempted to conduct a mechanical inspection of both the Tahoe and the Lumina.  It proved unfeasible to conduct a mechanical inspection of the Lumina, however, due to the extensive damage to that vehicle.  Officer Velebil was responsible for interviewing witnesses, obtaining information about the vehicles and drivers, and photographing the accident scene.

When Officer Espanto arrived at the scene he used approximately 31 evidence markers to denote the placement of physical evidence including tire treads, gouges, debris, the vehicles' points of rest, and the victim's location.  He measured the intersection and used a forensic mapping system, known also as a Sokkia Total Station, which is akin to surveying equipment and uses four units to capture different points of physical evidence.

Using the information he gathered, Officer Espanto prepared a diagram of the collision indicating the distance and direction the vehicles traveled.  Officer Espanto also entered the data he had gathered into an accident reconstruction software called Visual Statement FX.  Officer Espanto performed a "conservation of momentum" analysis to determine the speed at which each vehicle was traveling at the time of impact.  He concluded that the Tahoe was traveling at a minimum speed of 70.58 miles per hour at the time of the impact, and the Lumina was traveling at 19.78 miles per hour.

Officer Espanto prepared a written report of his mechanical inspection of the Tahoe.  He found no mechanical failures that could have contributed to the collision.

4

Based on the totality of the physical evidence, Officer Espanto concluded that the Lumina was turning left at the intersection of Francisquito and Ramona Boulevard when it was struck by the Tahoe. When struck, the Lumina spun around and traveled west until it hit a curb and a traffic light pole. After bouncing off of the light pole, the Lumina caught on fire.

California Highway Patrol Officer John Grindey was a member of the multi-disciplinary accident investigation team assigned to investigate the collision. Members of the team have training and experience in engineering, mechanical analysis, and accident reconstruction. Officer Grindey had received over 1,500 hours of accident reconstruction training. Over the preceding eight years, Officer Grindey had been involved with 533 accident reconstruction cases, and had personally accessed 200 EDR's from different vehicles. He had testified as an expert witness in a dozen cases. From the information he downloaded from the Tahoe's EDR, Officer Grindey concluded that the Tahoe was traveling at a speed of 80 miles per hour at the point of collision. Immediately after the collision the Tahoe was still traveling at 53 miles per hour.

Pathologist and deputy medical examiner for the Los Angeles County Department of the Coroner, Dr. Ogbonna Chinwah, conducted Williams's autopsy. He concluded that Williams had died within seconds after the impact as a result of blunt force trauma that caused fractures and ruptures of multiple organs within his abdomen and chest. He had suffered massive internal bleeding. He also had burns all over his body.

Noriega did not present evidence in his defense.

**DISCUSSION**

I.     **Admissibility of the Mechanical Analysis Report Prepared by Officer Espanto**

Noriega contends on appeal that the court erred by admitting into evidence the report prepared by Officer Espanto because (1) the statements contained in the report

5

were conclusions, which are not admissible under the business records exception to the hearsay rule (Evid. Code, § 1271), and (2) the report was prepared by an entity dedicated to the preparation of reports for use in litigation, and such reports are not admissible under Evidence Code section 1271.**2** In addition to the fact that defense counsel did not make a specific objection to preserve this issue for review on appeal, we find no error in the court's admission of the report into evidence.

### A. Background

After Officer Espanto testified, the prosecutor requested at sidebar that the report be received into evidence. Defense counsel objected. The court said the prosecution would have to attempt to develop a proper foundation for it as a business record, noting that the report contained more information than that to which Officer Espanto had testified before the jury.

Officer Espanto said that immediately after conducting a mechanical analysis of the Tahoe, he prepared the written report. He normally prepared such reports in the course of his work duties as a police officer and member of the Traffic Accident Investigation Team, and did so in this case. All of the information in the report was "of what [he] observed and determined." After defense counsel questioned Officer Espanto regarding preparation of the report, the court asked if counsel wished to argue on the issue of the business record exception. Defense counsel replied, "I would just object, Your Honor, and submit it." The court found that the proper foundation had been laid and, pursuant to sections 1271 and 1280, received the report into evidence. The court noted that the sources of the information and the time of preparation were such as to indicate trustworthiness. The court offered defense counsel the opportunity to ask additional questions in front of the jury regarding the report, but stated that it was satisfied the information in the report was nonhearsay "in that this officer made the observations personally, documented the information in the report, and there's not a

---

**2**      All further undesignated statutory references are to the Evidence Code.

6

second level of hearsay."  Defense counsel later engaged in further questioning regarding what tools Officer Espanto used to reach his conclusions.  He responded that he used a steel ruler to measure the brake pads, but for the most part his conclusions were based on his visual observation of the Tahoe's various systems, some of which he disassembled in order to evaluate their functioning.[3]

### B.    Analysis

It is important to note at the outset that the trial court admitted the report into evidence pursuant to both section 1271, the business records exception to the hearsay rule, and section 1280, the official records exception.  A trial court's ruling admitting a record under section 1271 is reviewed for an abuse of discretion.  (*People v. Jones* (1998) 17 Cal.4th 279, 308.)  Likewise, the trial court is vested with "broad discretion" to determine whether a party has established the foundational requirements of section 1280, and a reviewing court may overturn the trial court's exercise of discretion only upon a clear showing of abuse.  (*People v. Martinez* (2000) 22 Cal.4th 106, 120.)

Section 1271 provides:  "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:  [¶]  (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Similarly, section 1280 provides:  "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following

---

[3]    In his report, Officer Espanto set forth his findings regarding the mechanical functioning of the Tahoe's cooling system, engine, transmission, steering system, braking system, suspension, electrical system, and fuel system.

applies:  [¶]  (a) The writing was made by and within the scope of duty of a public employee.  [¶]  (b) The writing was made at or near the time of the act, condition, or event.  [¶]  (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

### 1.      Act, Condition, or Event

Noriega contends Officer Espanto was not simply recording an observed event in his report because the analysis of each system required the application of reasoning to determine the mechanical viability of a complex automotive system.  He argues that the statements contained in the report were *conclusions* that were inadmissible under the business records exception to the hearsay rule.  We disagree.

Both sections 1280 and 1271 permit the use of writings made as a record of an act, condition, or event to prove the act, condition, or event if specified conditions are met.  The report at issue here was a record of Officer Espanto's findings regarding the observable condition of the Tahoe's various mechanical systems.  The fact that special knowledge was required on Officer Espanto's part in order to appreciate the import of the observable condition of each system does not take the report out of the realm of being a report on the factual condition of the systems.  Noriega does not suggest that reasonable minds could differ on whether the factual circumstances of the systems Officer Espanto observed meant the systems were or were not functioning properly.  Instead, Officer Espanto used his knowledge of how the various components of each system should look and behave, based on standards evidently agreed upon by those familiar with automotive mechanics.  We therefore conclude the report fell within the description of writings made admissible by sections 1280 and 1271.

### 2.      Reports Prepared in Contemplation of Litigation

Noriega next contends that the report at issue was prepared by an entity dedicated to the preparation of reports for use in litigation and such reports are not admissible under section 1271.  That is generally a correct statement.  (See *People v. Khaled* (2010) 186

Cal.App.4th Supp. 1, 8 (*Khaled*), citing *Palmer v. Hoffman* (1943) 318 U.S. 109; *Gee v. Timineri* (1967) 248 Cal.App.2d 139, 148 [record not prepared in the "normal course" of business but in anticipation of the lawsuit with defendant].)

Here, however, the trial court found that the report was properly admitted under section 1280, the official records exception to the hearsay rule, and there is no such limitation on documents admitted pursuant to section 1280. This section requires that the writing be "made by . . . a public employee" and that the public employee must be under a legal duty to make such reports. (§ 1280, subd. (a); see *Khaled, supra*, 186 Cal.App.4th Supp. at p. 6.) Reports prepared by public employees who prepare documents in the regular course of their duties, even if those documents are often presented as evidence in a court of law, are properly admissible so long as the foundational requirements are met.

"Under either exception [(§ 1280 or § 1271)], '[i]n addition to the statutory requirements, the courts have imposed some conditions relative to the admissibility of a public record: (a) the record must be made by an official pursuant to governmental duty; [citations], and, (b) the record must be based upon the observation of an informant having a duty to observe and report. [Citation.] In this regard, a record based on the statements of third parties, e.g., an auto accident report compiled by the police, is inadmissible. [Citation.]' (*People v. Flaxman* (1977) 74 Cal.App.3d Supp. 16, 20; see, e.g., *MacLean v. [San Francisco]* (1957) 151 Cal.App.2d 133, 143; *Reisman v. Los Angeles City School Dist.* (1954) 123 Cal.App.2d 493, 505-506; *Pruett v. Burr* (1953) 118 Cal.App.2d 188, 200-201.)" (*People v. Ramos* (1997) 15 Cal.4th 1133, 1177.) Officer Espanto was a public employee whose duty it was to observe and report his findings in performing mechanical analyses of vehicles. (See *MacLean v. San Francisco, supra*, 151 Cal.App.2d at p. 143.) Furthermore, the report was based on Officer Espanto's personal observations. The report was properly admitted.

In any event, even were we to conclude that admission of the report was error, the error was not prejudicial. Officer Espanto testified directly about his observations of the Tahoe's mechanical systems, as well as to the contents of the report. Defense counsel had every opportunity to cross-examine him about his observations and the contents of

9

the report.  Any error was necessarily harmless, whether measured by federal constitutional or state standards.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

**II.     Expert Testimony Regarding EDR Data Required a *Kelly* Hearing**

Noriega next contends that forensic use of the EDR data constitutes use of new and untested science and therefore the court was required to conduct a hearing under *Kelly*, *supra*, 17 Cal.3d 24, and find that forensic use of such data is generally accepted in the scientific community before allowing its admission into evidence.  He also argues that Officer Grindey's testimony was inadequate to qualify him to testify on the subject.  We find that these related issues were forfeited because defense counsel did not raise them at trial, and that in any event any error in admitting the EDR testimony was harmless.

*A.     Background*

Officer Grindey stated that the primary function of the EDR system is to determine if the air bags would be deployed in a collision.  The severity of the collision is determined by way of an accelerometer contained within the EDR unit.  As part of this process, the EDR collects data to determine the speed of the vehicle prior to and at the time of the collision, as well as the rate of deceleration.  The data remains stored in the module.

The Baldwin Park Police Department obtained a search warrant that permitted Officer Grindey to download the information using a data link connector that he hooked into the "DLC" underneath the dashboard, plugged in through the EDR module, then connected to his laptop.  He then queried the computer software program, which eventually generated a seven-page report.  Officer Grindey also prepared a second report, two pages long, that accounted for the different speedometer reading that would occur because the actual tires on the Tahoe were not the size recommended by the manufacturer.  In preparing the second report he used a website called Tennessee Tires.  The prosecutor asked what size tire the Tahoe came out of the factory with, and defense

10

counsel objected based on lack of foundation and hearsay grounds. The trial court responded that it would "sustain also on 352." The prosecutor said the next document he wished to have marked for identification was the seven-page crash data retrieval for the Tahoe generated by the computer software program. The prosecutor asked Officer Grindey how fast the Tahoe was going prior to the collision. Defense counsel objected again based on lack of foundation and hearsay grounds. The court responded by informing the jury that a recess would be taken.

Outside of the jury's presence, the court went through the document page by page with Officer Grindey. They agreed that the first two pages were a description of the program and its limitations. Officer Grindey said the third through sixth pages were generated as a result of the data that he had downloaded that had been recorded within the EDR module. Those pages reported the speed change over time that the EDR recorded, causing the air bags to deploy. Officer Grindey identified for the court the portions of the report that described the data recorded at the time of the crash, including the rate of deceleration that occurred upon impact. Other portions of the report had to do with time periods unrelated to the collision. The last page of the document contained Officer Grindey's comments describing how and where he performed the data recovery and assessment. The court then asked Officer Grindey about the two-page report regarding the actual tire size for the Tahoe.

The trial court addressed defense counsel's hearsay objection regarding the data retrieved from the EDR. Defense counsel said that it was not clear how the information in the report was determined because the results relied on a computer program generated by someone else. She did not know who inputted the data to create that program and thus it was all hearsay.

The prosecutor replied that section 1552 permitted the use of a printed representation of computer information.[4] The court asked defense counsel if she wanted

---

[4]     Section 1552 provides in relevant part: "(a) A printed representation of computer information or a computer program is presumed to be an accurate representation of the

(Fn. continued.)

11

to argue any additional factors.  Counsel responded that the testimony was vague, saying, "I've just had a really hard time keeping up with this witness, speed and everything."  The court overruled the vagueness objection, noting counsel could cross-examine the witness.  The court sustained the objection to pages one, two, five, six, and seven of the report as irrelevant and confusing.  (Evid. Code, § 352.)  The court marked for identification pages three and four of the seven-page report, and the first page of the two-page report regarding the tires.

The court stated:  "As to the objections under computer print-out under Evidence [Code] Section 1552, I overrule your objection.  It has become in litigation both civil and criminal stand [*sic*] fairly standard operating procedure and given our advancements in technology and, in fact, the reason that 1552 even came to being is because of the reality of computer generated records, there are a number of cases in California and other states, federal jurisdictions that have assessed this issue including relative to the electronic or rather event data recorders.  The witness has already testified to his training and expertise and downloading the data, that the National Traffic Safety, NTSB, that is data that is utilized and recognized, the length of time that this particular computerized information has been available for use on vehicles.[5]  Relative to the issue of this particular type of computerized download being common and accepted, the witness testified I think that in a certain year all vehicles were . . . ."  Officer Grindey interjected, "By 2013 all vehicles

computer information or computer program that it purports to represent.  This presumption is a presumption affecting the burden of producing evidence.  If a party to an action introduces evidence that a printed representation of computer information or computer program is inaccurate or unreliable, the party introducing the printed representation into evidence has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the computer information or computer program that it purports to represent."

**5**      Officer Grindey testified that each automobile manufacturer used its own method of collecting data, "but they do try to develop NHTSA, National Highway Transportation Safety Administration has current rulings called par 513 which by model year 2013 requires all vehicles to have some type of event data recorder in some kind of data where you have precrash data and actual speed change data within that box itself."

12

would be subjected to this." The court continued, "[T]his data is generally acceptable, used by law enforcement, accident reconstruction specialists, manufacturers, regulatory bodies. California has, in fact, adopted a statute [Vehicle Code section] 9951[6] which was adopted in 2003 dealing with the ownership and assessment of EDR data specifically dealing with how it is to be accessed. I did inquire and was advised by the witness that he obtained a search warrant and that's one of the ways that the data can be downloaded."

---

**6** Vehicle Code section 9951 provides in relevant part as follows: "(a) A manufacturer of a new motor vehicle sold or leased in this state that is equipped with one or more recording devices commonly referred to as 'event data recorders (EDR)' or 'sensing and diagnostic modules (SDM),' shall disclose that fact in the owner's manual for the vehicle.

"(b) As used in this section, 'recording device' means a device that is installed by the manufacturer of the vehicle and does one or more of the following, for the purpose of retrieving data after an accident:

"(1) Records how fast and in which direction the motor vehicle is traveling.

"(2) Records a history of where the motor vehicle travels.

"(3) Records steering performance.

"(4) Records brake performance, including, but not limited to, whether brakes were applied before an accident.

"(5) Records the driver's seatbelt status.

"(6) Has the ability to transmit information concerning an accident in which the motor vehicle has been involved to a central communications system when an accident occurs.

"(c) Data described in subdivision (b) that is recorded on a recording device may not be downloaded or otherwise retrieved by a person other than the registered owner of the motor vehicle, except under one of the following circumstances:

"(1) The registered owner of the motor vehicle consents to the retrieval of the information.

"(2) In response to an order of a court having jurisdiction to issue the order.

"(3) For the purpose of improving motor vehicle safety, including for medical research of the human body's reaction to motor vehicle accidents, and the identity of the registered owner or driver is not disclosed in connection with that retrieved data. . . .

"(4) The data is retrieved by a licensed new motor vehicle dealer, or by an automotive technician as defined in Section 9880.1 of the Business and Professions Code, for the purpose of diagnosing, servicing, or repairing the motor vehicle. . . . "

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) This section applies to all motor vehicles manufactured on or after July 1, 2004."

The court continued: "There's no motion relative to that, but I'm just pointing out how the lay of the land has changed relative to the utilization of downloaded data. Everything from iPods. It's become so common. And that's essentially the basis for the 1552 exception in the Evidence Code as well. This particular Vehicle Code does not address it from an evidentiary standpoint. It's simply authorizing how it's to be handled and treated. But it's part of the picture of how society has changed relative to computer print-outs. So on foundational grounds, overruled. Hearsay, overruled. The issues that you would raise would go to weight, not admissibility in terms of your cross-examination."

### B. Analysis

From the foregoing recitation of the proceedings concerning Officer Grindey's testimony regarding the conclusions he reached based on the Tahoe's EDR data, it is evident that defense counsel did not bring a motion seeking a *Kelly* hearing or object to the admission of the EDR evidence on the basis that it did not meet the standards set forth in *Kelly*. On appeal, Noriega argues that "[d]efense counsel did not specifically request a *Kelly* hearing because the court conducted an inquiry outside the presence of the jury on its own motion inquiring into various aspects of the device, the science of EDRs, and the computer program on which Grindey had relied to download the data and concluded the 'data is generally acceptable.' [Record citation.] [¶] Although it is well-established that the burden is on the proponent of the evidence in a *Kelly* hearing—here the prosecution— the court took the laboring oar in the inquiry. [Record citation.] (*People v. Pizarro* (1992) 10 Cal.App.4th 57, 67.)"

This argument misconstrues the nature of the court's inquiry into the admissibility of the document generated by the computer software that downloaded information from the Tahoe's EDR. The record demonstrates that defense counsel objected on grounds of lack of foundation and hearsay, and the prosecution responded that the document was properly admissible under Evidence Code section 1552. That statute and tangentially Vehicle Code section 9951 were the subject of the court's discussion of use of the EDR-

14

related document. The court did make some statements that would be relevant in the context of a *Kelly* hearing, to the effect that such data "is utilized and recognized," and had been available for some length of time. "Relative to the issue of this particular type of computerized download being common and accepted, the witness testified" that by 2013 all vehicles would be required to have it. The court noted "[t]hat this data is generally acceptable, used by law enforcement, accident reconstruction specialists, manufacturers, regulatory bodies." However, the court then specifically noted, "[t]here's no motion relative to that." It was incumbent upon defense counsel at that point to bring such a motion or object that the *Kelly* standards had not been adequately demonstrated.[7] She failed to do so. Noriega cannot excuse his forfeiture of the issue by claiming the court held a *Kelly* hearing, albeit a purportedly inadequate one. The court did not hold a *Kelly* hearing because defense counsel did not request one and furthermore did not make such a request or object even after the court touched on the subject. Under these circumstances, Noriega failed to preserve the issue for appeal. (*People v. Clark* (1993) 5 Cal.4th 950, 1018-1019, disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Kaurish* (1990) 52 Cal.3d 648, 688.)

Finally, no prejudice could have resulted from the admission of the EDR testimony because separate and apart from Officer Grindey's testimony that relied on the EDR data, Officer Espanto testified based upon physical data gathered at the scene of the accident that the Tahoe was traveling at a *minimum* speed of 70.58 miles per hour at the time of the impact with Williams's car. Officer Grindey's conclusion was that the Tahoe was traveling 10 miles per hour faster than that. There could be no doubt in a reasonable juror's mind that Noriega was driving in a 40-mile-per-hour zone at a reckless speed and risked taking another person's life by doing so, whether he was traveling 70 or 80 miles per hour. We conclude that even if the court erred by admitting the EDR evidence, any

---

[7]    As set forth in *Kelly*, *supra*, 17 Cal.3d at page 30, such a hearing would have inquired into (1) the reliability of the method in general, (2) the use of proper scientific procedures in the particular case, and (3) whether the witness furnishing such testimony is a properly qualified expert.

error was necessarily harmless, whether measured by federal or state standards. (*Chapman v. California*, *supra*, 386 U.S. at p. 24; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

SUZUKAWA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

16